Commonwealth of Pennsylvania *v.* Beck Electric Construction, Inc., Appellant.

230

Argued June 6, 1977, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three. Judge KRAMER did not participate in the decision.

*Albert J. Tomalis, Jr.,* with him *Metzger, Hafer, Keefer, Thomas and Wood,* for appellant.

*Paul S. Roeder,* Deputy Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, October 25, 1977:

The issue before us is whether the installation of certain electrical equipment as part of a building's electrical system, pursuant to an electrical construction contract, should be classed as "use" of that equipment by the contractor in the fulfillment of its contract, or considered a sale of that equipment for the purposes of The Tax Act of 1963 for Education, Act of March 6, 1956, P.L. (1955) 1228, *as amended,* 72 P.S. §3403-1 et seq. (Act).[1]

This issue is crucial because the subject items were installed in a building which was constructed for the General Services Administration of the Commonwealth of Pennsylvania (GSA) and hence would be

---

[1] This section was repealed and reenacted by the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, as Section 201 thereof *as amended,* 72 P.S. §7201 et seq., after the date of the incident herein. The substance of the act, however, remains the same.

excluded from taxation under Section 203 of the Act, 72 P.S. §3403-203(i) if classified as a "sale at retail."[2]

The tax is imposed by Section 201 of the Act, 72 P.S. §3403-201, which taxes both but which also distinguishes between *sales* and *uses* of personal property. In its relevant part, it reads:

> (a)   There is hereby imposed upon each separate sale at retail as defined herein within this Commonwealth a tax of five (5) per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.
>
> (b)   There is hereby imposed upon the use, on and after the effective date of this act, within this Commonwealth of tangible personal property purchased at retail . . . .

For the purposes of the statute, "use" is defined as "[t]he exercise of any right or power incidental to the ownership, custody or possession of tangible personal property and shall include, but not be limited to transportation, storage or *consumption*."[3] (Emphasis added.) "Sale at retail" is defined as "[a]ny transfer, for a consideration, of the ownership, custody or possession of tangible personal property, including the grant of a license to use or consume whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected."[4]

---

2 Section 203(e) of the Act states:

The tax imposed by section 201 shall not be imposed upon

. . . .

(i)   The sale at retail to, or use by the United States, this Commonwealth or its instrumentalities or political subdivisions of tangible personal property or services.

3 Section 2(n) of the Act, 72 P.S. §3403-2(n).

4 Section 2(j) of the Act, 72 P.S. §3403-2(j).

Beck Electric Construction, Inc. (Appellant) installed in certain buildings being constructed for GSA parts of the electrical supply system which included transformers, electric panels and switchgear, and building-wide sound and master clock systems. Much of the electrical supply equipment was large and bulky but the process of installation was not particularly difficult or complicated. The sound and clock components installed were smaller, freestanding and simple to emplace, but were part of building-wide master systems. All work was performed pursuant to building construction contracts of which one, dated February 7, 1969, has been stipulated to be typical. The contract describes Appellant as ''contractor'' and is for the ''Electrical Construction, Construction of Recreation Therapy Building and Outdoor Ampitheater.'' It provided that:

''FIRST: The Bidder's Proposal, Schedule of Prices, General Conditions, Special Requirements, Specifications, Bulletins, and the Plans and Drawings referred to herein, are hereby incorporated into and made parts of the Contract to the same extent as if they were herein fully set forth.

'' . . . .

''THIRD: Contractor agrees to furnish and deliver materials, water, tools, equipment, light power, and transportation and secure all permits and licenses, and *to do and perform all labor, superintendence, and all means of construction necessary to execute, construct* and finish in an expeditious, substantial and workmanlike manner *all the work necessary under this contract and more specifically shown on the Plans* and set forth in specifications to which reference has heretofore been made; *all of said work* to be done in accordance with said Plans, Specifications, General Conditions and other terms and conditions of this contract to

the satisfaction of The Authority.'' (Emphasis added.)

Other provisions of the contract warranted all *work* performed, including the materials used. Although not dispositive of the case, the contract is, on its face, clearly for electrical construction and not for the sale of personal property.

No sales or use tax was paid on the items at issue and in June of 1971, the Bureau of Sales and Use Tax assessed a deficiency in the amount of $13,873.20. Interest and penalties were added. This amount was reduced to $1,487.27 by the payment of certain items by Appellant and the exclusion of other items from tax liability by the Board of Review of the Department of Revenue, Bureau of Taxes for Education (Board). Board's decision was based upon the definition in Regulation 150 of the Bureau of Sales and Use Taxation (Regulation). The contractor's appeal prompted an evidentiary hearing which this Court heard on December 14, 1976.

Basically, the Commonwealth argues that Appellant ''used'' or ''consumed'' these items in fulfilling its construction contract with GSA and is therefore liable under the ''use'' portion of the tax. Appellant, on the other hand, contends that it merely sold these items to GSA at retail and installed them.

Assuming, arguendo, that the regulations have been properly applied, Regulations 207(2) and 150 are dispositive of this matter. They provide in their relevant portions:

Section 207(2) states:

The sale to or use of tangible personal property by construction contractors in the construction, reconstruction, remodeling, repair and maintenance of real estate including but not limited to, buildings, roads, structures and

bridges, for or on behalf of the Commonwealth or its political subdivisions is subject to tax. Regulation 150 states:

A contractor is liable for the payment of tax on property used or consumed in the performance of construction activities notwithstanding that such activities are performed pursuant to a contract with a government agency or other entity or person exempt from tax on its own purchases . . . .

The term 'Contractor' as used in this regulation means any person engaged in performing a construction contract and refers to prime contractors and subcontractors including but not limited to persons engaged in building, *electrical work* . . . .

The term 'Construction Contract' means a contract whether lump sum, cost plus, or time and materials, under the terms of which a person agrees to perform construction activities. *Construction activities include the furnishing of necessary materials,* supplies, equipment or fixtures, *and the use, installation and/or incorporation* of them in constructing, reconstructing, erecting, altering, improving or repairing a road, bridge, building, other structure or any real estate. *Any contract which requires the contractor to attach or affix property to real estate so that the property becomes a permanent part of the real estate is a construction contract.* For example, the installation of a bath tub which is connected with water lines and drain lines is a construction activity, and the installation of an ordinary space-heating furnace is a construction activity. (Emphasis added.)

These regulations were promulgated pursuant to Section 580[5] of the Act, 72 P.S. §3403-580(a), wherein the Department of Revenue "is hereby authorized and empowered to prescribe, adopt, promulgate and enforce rules and regulations not inconsistent with the provisions of this act, relating to any matter or thing pertaining to the administration and enforcement of the provisions of the act. . . ." ·

Appellant questions the legality of the above regulations.

"[I]t is axiomatic that a properly promulgated regulation has the force and effect of law." *Charles Riebe Construction Co. v. Commonwealth,* 17 Pa. Commonwealth Ct. 508, 512, 333 A.2d 226, 228 (1976). In setting the standard of review for the evaluation of the legality of an administrative rule promulgated pursuant to enabling legislation, our Supreme Court wrote in *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 77-78, 313 A.2d 156, 169 (1973):

---

[5] These regulations were revised after the reenactment of the Act in 1971 but remain essentially the same. The new section 150 is reproduced as it sheds additional light on the proper interpretation of the statute:

Construction activities. Any activity resulting from an agreement or contract under which a contractor attaches or affixes property to real estate so as to become a permanent part thereof. Construction activities also include the service of repairing real estate even though no property is transferred by a contractor in conjunction with the repairs which he makes. Examples of construction activities include: Erecting a building; constructing a bridge or road; installing tile or terrazzo; painting a building; repairing a roof; landscaping or planting trees or grass; repairing spouting, faucets, furnaces or plaster; laying brick or stone; excavating a cellar; paper hanging; replacing a window pane; installing a kitchen cabinet; moving a building; installing or replacing electrical outlets, etc.

An interpretive rule on the other hand depends for its validity not upon a *law*-making grant of power, but rather upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation. (Emphasis in original.) (Footnote omitted.)

We consider that the interpretation of the statute by the regulation to be altogether proper. The statute distinguishes between "uses" and "sales" which must be reflected in the taxing policy of the Department of Revenue and its regulations. It is obvious that the transaction described herein contains elements of both a "use" and a "sale." Appellant most assuredly "used" or "consumed" these items in the performance of its construction contract with GSA, but it also sold them without modification (except for installation) to GSA. For the purposes of the statute, the same transaction cannot be both a "use" and a "sale." The tax exclusion for sales at retail to the Commonwealth requires that a somewhat arbitrary distinction must be made because a construction transaction necessarily contains elements of both. The regulation which draws the line between "sales" and "uses" at the point at which the items become a permanent part of the real estate is logical, totally consistent with all portions of the statute and reflective of the legislative intent as revealed by other sections of the statute. This concept was adopted by those who drafted the

statute as is evident by certain transitional portions of the statute applicable to construction contracts in existence at the time the statute was enacted, which provides:

The sale at retail or *use of material to be incorporated into and made a part of real estate* pursuant to a contract for the construction, reconstruction, remodeling, repairing, maintenance or sale of such real estate. . . .[6] (Emphasis added.) ·

The meaning is indisputably clear. Material which is "incorporated into and made a part of the real estate pursuant to a contract for the construction of such real estate" is considered to be "used" and not "sold." Therefore, Regulations 207(2) and 150 correctly reflect this portion of the statute. In the absence of any other definition of "sale" or "use" as it precisely relates to the instant type of transaction, this language must be considered to be indicative of the legislative intent.

Furthermore, the Supreme Court in *Uniontown, supra,* cited K. C. Davis, 1 Administrative Law Treatise §5.03, at 300 (1958), which provided the following additional aides to interpretation of regulations:

Professor Davis summarizes the factors which affect judicial review of *interpretative* regulations as follows: 'An interpretative rule may or may not have the force of law, depending upon such factors as (a) whether the court

---

[6] Section 203(d1) of the Act, 72 P.S. §3403-203(d1), Section 203 (d2), 72 P.S. §3403-203(d2), Section 203(d), 72 P.S. §3403-203(d), and Section 203(0), (01), (02), (03), 72 P.S. §3403-203(01), (02), (03,), state essentially the same distinction. Thereafter, the sections were reenacted as Sections (5), (6), (7), (8), (20), (21), (22), (23) of Section 204 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, 72 P.S. §7204(5), (6), (7), (8), (20), (21), (22), (23).

agrees or disagrees with the rule, (b) the extent to which the subject matter is within special administrative competence and beyond general judicial competence, (c) whether the rule is a contemporaneous construction of the statute by those who are assigned the task of construction of the statute, (d) *whether the rule is one of long standing, and (e) whether the statute has been reenacted by legislators who know the content of the rule.*' K. C. Davis, 1 Administrative Law Treatise §5.03, at 300 (1958).[7] (Emphasis in original.) (Emphasis added.)
455 Pa. at 78 n.26, 313 A.2d at 169 n.26.

The regulations here at issue are long standing and the underlying statute are reenacted after their promulgation.

Considering the foregoing, the cases cited by Appellant are not controlling since they dealt with statutes that did not distinguish "sales" and "use" or dealt with the classification of property for property tax purposes rather than the classification of the activity involved for "sales" and "use" purposes.

Next, we must determine whether the regulations have been properly applied in this case. Appellant has the burden of proof demonstrating that the regulations

---

[7] Although important, too much significance should not be attached to the long standing nature of the rule or legislative reenactment. *See Massachusetts Trustees of Eastern Gas and Fuel Associates v. United States,* 377 U.S. 235, 241, 84 S.Ct. 1236, 1241-42, 12 L.Ed. 2d 268 (1964). For our Supreme Court's view of a legislative failure to modify its holding rather than failure to modify an administrative agency's rule, *see Commonwealth v. Wanamaker,* 450 Pa. 77, 89, 296 A.2d 618, 623-24 (1972). There is no leading case in Pennsylvania, however, dealing with the failure of the legislature to change by law the rule of an administrative agency in a subsequent reenactment of the underlying legislation.

have been improperly applied according to Section 545 of the Act, 72 P.S. §3403-545.[8]

We must reject the extreme arguments urged by the Commonwealth and Appellant. The Commonwealth appears to contend that virtually any item installed pursuant to a building construction contract is necessarily consumed by the contractor and thus is taxable. Such an interpretation is not consistent with either their own regulations or the statutory definition found in the transitional sections. The statute requires that if an activity is to be classed as a "use" rather than a "sale," it must be pursuant to a construction contract *and also be* "incorporated into and made part of the real estate." Contrary to Appellant's assertion, the ease of installation is also not dispositive as the nature of the item. Its relationship to the property as a whole must be considered in determining whether it is part of the real estate.

Turning now to the individual items which are the subject of this suit, we hold that the "use" tax has been properly applied to the transformers, switchgear, and other electrical supply distribution equipment at issue, and therefore we affirm the Board as to those items. They were installed pursuant to an electrical construction contract, and as is amply demonstrated by the photographs and documents in the record, were an integral part of the building's electrical system. They can be validly viewed as having been incorporated and made part of the real estate.

However, we must hold that Appellant has demonstrated that the sound and master clock systems should not be subject to the "use" tax and thus we reverse the Board as to these items. Aside from the fact that they

_____

[8] Section 545 of the Act, 72 P.S. §3403-545, states: "In all cases for reassessment, review or appeal, the burden of proof shall be upon the petitioner or appellant as the case may be.

were installed pursuant to an electrical construction contract, we find no evidence that they became or were intended to become a permanent part of the real estate as is required by Regulation 150. The photographs, documents and testimony in the record made by Appellant clearly justified this conclusion. We also note that the Board itself had exempted sound equipment in its review of Appellant's claim while at the same time it failed to exempt the other identical equipment here at issue.

Therefore, the following items are hereby exempted from taxation and the use tax assessed upon them deleted.

Selinsgrove State School and Hospital,
Snyder County, Pennsylvania

| Item | Use Tax | |
|---|---|---|
| Sound Equipment | $ 86.40 | |
| Grille, Backboxes and Speakers | 6.00 | $    92.40 |

Bloomsburg State College,
Bloomsburg, Pennsylvania

| | | |
|---|---|---|
| Master Clock | $ 90.00 | |
| Flush Mounted Secondary Clocks | 34.50 | |
| Surface Mounted Secondary Clocks | 34.50 | |
| Clock Backboxes | 9.00 | 168.00 |

North Vo-Tech High School, Schuylkill
County, Frackville, Pennsylvania

| | | |
|---|---|---|
| Sound Console, Transformer, Microphones and Dukane sound equipment | $165.52 | |
| Speakers, trim rings for outside of speakers | 12.90 | 178.42 |

South Vo-Tech High School, Schuylkill
County, Pennsylvania

| Sound transformers for speaker | $ 19.50 | 19.50 |
|---|---|---|

|  | TOTAL | $ 455.30 |
|---|---|---|
|  | Prior Tax | $1,487.27 |
|  | Deleted Tax | 455.30 |
|  | Tax now owing | $1,031.97 |

Appellant submitted evidence of prior inconsistent decisions by the Board when ruling upon the similar claims of other taxpayers and asserts these inconsistencies constitute an estoppel against the Commonwealth if not a denial of due process. These arguments have no merit.

Our Supreme Court has held:

It is a fundamental legal principle that a State or other sovereignty cannot be estopped by any acts or conduct of its officers or agents in the performance of a governmental as distinguished from a proprietary function. No errors or misinformation of officers or agency can estop the government from collecting taxes legally due. However firmly established the rule as to private individuals or corporations that where a person has been induced to act to his detriment by the representations of an agent he can hold the principal on the theory of estoppel, that rule does not apply when a government is the principal.

*Commonwealth v. Western Maryland Railway Co.*, 377 Pa. 312, 320-21, 105 A.2d 336, 340-41 (1954). *See also Commonwealth v. Rohm and Haas Co.*, 28 Pa. Commonwealth Ct. 430, 368 A.2d 909 (1977).

Nor can Appellant successfully maintain that the er-

rors and inconsistencies of the taxing authorities are a denial of equal protection to it, as it was not a

deliberate, purposeful discrimination in the application of the tax. . . . Mere error by a taxing officer in applying a statute which imposes the same tax base and the same rate of tax on all corporations similarly situated does not infringe upon these protections [of uniformity and equal protection].

*Commonwealth v. Koppers Co.*, 397 Pa. 523, 532, 156 A.2d 328, 334 (1959).

Accordingly, we enter the following

### ORDER

AND Now, this 25th day of October, 1977, the appeal of Beck Electric Construction, Inc., is dismissed in part and sustained in part; unless exceptions are filed within thirty (30) days of the filing of this Order, the Chief Clerk is directed to enter judgment in favor of the Commonwealth in the amount of $1,031.97, together with interest from December 31, 1970.

Judge KRAMER did not participate in the decision in this case. *See* Pa. R.A.P. 3102(d).