392 A.2d 321

**COMMONWEALTH of Pennsylvania**

v.

**MOLYCORP, INC., Appellant.**

Supreme Court of Pennsylvania.

Argued May 22, 1978.

Decided Oct. 5, 1978.

Sherill T. Moyer, Harrisburg, for appellant.
Joseph F. Lynch, Deputy Atty. Gen., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-
EROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

■ We are here[1] presented with a record which demon-
strates that the Commonwealth has violated the Uniform
Taxation Clause, Pa.Const. art. VIII, § 1, by discriminatorily
enforcing against appellant, Molycorp, Inc., that provision of
the Tentative Tax Act[2] authorizing an additional tax to be

1. We hear this appeal pursuant to the Appellate Court Jurisdiction
Act, Act of July 31, 1970, P.L. 673, § 203, 17 P.S. § 211.203 (Supp.
1978).

2. Act of November 12, 1971, P.L. 541, § 1, formerly 72 P.S. § 3385,
provided in relevant part:
   "(a) Notwithstanding the provisions of any State tax law to the
   contrary which requires taxpayers to make payment of tentative
   tax, including  .  .  .  corporate net income  .  .  .  or other
   similar tax law requiring payment of tentative tax, such taxpayers,
   commencing with the calendar year 1970 and fiscal years begin-
   ning during the calendar year 1970 and each taxable year thereaft-
   er, on or before the thirtieth day of April for calendar year taxpay-
   ers, and on or before the end of the fourth month after the close of
   its previous fiscal year for fiscal year taxpayers, shall pay on
   account of the tax due for the current year not less than ninety per
   cent of the amount of said tax; the said amount to be computed by
   applying the current tax rate to ninety per cent of such tax base
   from the immediate prior year as may be applicable with respect to
   the tax being reported; Provided, however, That  .  .  .  said
   payment may at the taxpayer's election be computed by applying
   the current tax rate to ninety per cent of the taxable income  .  .
   received or accrued by the taxpayer during the first three months
   of the current calendar or fiscal year period annualized, which
   amount resulting from said annualization shall not be less than
   ninety per cent of the tax basis as is actually reported in the annual
   report for the current calendar or fiscal year.  The remaining
   portion of the tax due shall be paid upon the date the taxpayer's
   annual report is required to be made under the applicable tax
   statute.
   (b) Should it subsequently be determined that the amount of the
   tentative tax was understated by more than five per cent, there
   shall be added to the tax determined to be due an additional ten per
   cent of the understatement and said percentage addition to the
   understatement shall be deemed an additional tax and shall bear
   interest from the date the tentative tax was due."

assessed when a taxpayer underpays its Pennsylvania Corporate Net Income Tax. We therefore reverse the order of the Commonwealth Court and strike the settlement of additional tax against Molycorp.

Four months after the beginning of any calendar or fiscal year, corporations subject to the Pennsylvania Corporate Net Income Tax must file returns for, and make payment of, their Tentative Corporate Net Income Tax for that year. The Tentative Tax Act provides corporate taxpayers a choice of two methods for calculating tentative tax: [3]

Method I—Application of the current tax rate to 90% of the "tax base" for the preceding calendar or fiscal year.

Method II—Application of the current tax rate to 90% of the "taxable income" of the first three months of the current calendar or fiscal year, annualized.

The statute further provides that a corporation whose tentative tax payment for a given year is less than 95% of the 90% of its final tax liability for that year must pay an additional tax of 10% of the deficiency, plus interest.[4]

Molycorp, Inc., a calendar year taxpayer, computed its 1973 tentative tax on the basis of Method II. The tentative tax so computed was zero. Molycorp reported its final corporate net income tax for 1973 as $97,978. Appellee, the

Tentative tax and additional tax provisions are now contained in the Act of December 21, 1977, P.L. 330, § 6, 72 P.S. § 8202.1 (Supp.1978).

3. Act of 1971, § 1(a) (text supra note 1).

4. Act of 1971, § 1(b) (text supra note 1); see note 5 infra for calculation in this case.

Molycorp's argument that subsection (b) imposes additional tax only when the taxpayer improperly calculates either its "tax base" for the preceding year (Method I) or its "taxable income" for the current year (Method II) is without merit. Language imposing the additional tax only when the taxpayer improperly calculated its tax base for the preceding year appeared in an earlier version of the statute, Act of March 16, 1970, P.L. 180, § 1(b) (which allowed only Method I calculations of tentative tax), but was expressly deleted from, and repealed by the Act of 1971, at P.L. 542, §§ 1(b) & 2 (§ 1(b) text is in note 1, supra) (§ 2 repeals § 1(b) of Act of 1970, P.L. 180). See Statutory Construction Act, 1 Pa.C.S.A. § 1921(c)(5) (Supp.1978) (former law to be used in determining intent of General Assembly).

Commonwealth, assessed Molycorp an additional tax of $8,818 because of Molycorp's underestimation of its tentative tax.[5] Molycorp sought review of the imposition of this additional tax. The Board of Finance and Revenue held that the additional tax was properly imposed and the Commonwealth Court affirmed.

Molycorp asserts that the Commonwealth administers the additional tax discriminatorily, in violation of the Uniform Taxation Clause of the Pennsylvania Constitution, Pa.Const. art. VIII, § 1.[6] Taxpayer allegations of violations of the federal equal protection clause and the Pennsylvania uniform taxation clause are analyzed in the same manner, e. g., *Commonwealth v. Westinghouse Electric Corp.*, 478 Pa. 164, 386 A.2d 491 (1978); *Fisher Controls, Inc. v. Commonwealth*, 476 Pa. 119, 381 A.2d 1253 (1977); *Columbia Gas Corp. v. Commonwealth*, 468 Pa. 145, 153–54, 360 A.2d 592, 597 (1976), although the two clauses may not have exactly the same scope. See *Amidon v. Kane*, 444 Pa. 38, 279 A.2d 53 (1971) (statute violated uniformity clause only). In analyzing Molycorp's claim, we therefore examine both federal and state causes involving alleged unequal enforcement of tax laws.

█ "A taxpayer complaining that administration of a tax violates its right to be taxed uniformly with others in its class must demonstrate 'deliberate, purposeful discrimination in the application of the tax . . . before constitutional safeguards are violated.'" *Fisher Controls, Inc. v. Commonwealth*, 476 Pa. at 125, 381 A.2d at 1256, quoting

---

**5.** The steps in calculating the additional tax are:
   (1) 90% of $97,978 = $88,180
   (2) $88,180 – $0 (tentative tax paid) = $88,180 (deficiency in tentative tax)
   (3) 10% of $88,180 = $8,818 (additional tax imposed).

**6.** Appellant also claims that the additional tax provision on its face violates the due process and equal protection clauses of the United States Constitution and the Uniform Taxation Clause of the Pennsylvania Constitution, and that the administration of this statute violates the federal equal protection clause. We need not reach these issues.

*Commonwealth v. Koppers Co.*, 397 Pa. 523, 532, 156 A.2d 328, 334, appeal dismissed for want of a substantial federal question, 364 U.S. 286, 81 S.Ct. 43, 5 L.Ed.2d 38 (1960). Accord, *Commonwealth v. Westinghouse Electric Corp.*, supra; *Stilman v. Tax Review Board*, 402 Pa. 492, 166 A.2d 661 (1961). Such discrimination can be demonstrated by showing "systematic unequal enforcement" of a tax statute. *Fisher Controls, Inc. v. Commonwealth*, supra, 476 Pa. at 126, 381 A.2d at 1257; accord, *Sunday Lake Iron Co. v. Wakefield Township*, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918) (although challenged assessment was probably higher than others under the same statute, no violation of equal protection occurred in absence of "systematic undervaluation . . . of other taxable property" or "any purpose or design [of the taxing authority] to discriminate"); *Cumberland Coal Co. v. Board of Revision*, 284 U.S. 23, 25, 28–29, 52 S.Ct. 48, 49, 50, 76 L.Ed. 146 (1931) (relief granted where "deliberately adopted system" taxed taxpayer's property at a rate much higher than that applied to property of most others similarly situated). Mere errors in assessment will not support a claim of violation of uniformity of taxation. E. g., *Commonwealth v. Westinghouse Electric Corp.*, supra; *Sunday Lake Iron Co. v. Wakefield Township*, supra.

The parties have stipulated the facts of this case. The stipulation "binds the Commonwealth—as it does the taxpayer . . . ." *Commonwealth v. Carheart Corp.*, 450 Pa. 192, 196, 299 A.2d 628, 630 (1973); accord, *Commonwealth v. Philadelphia Electric Co.*, 472 Pa. 530, 372 A.2d 815 (1977); *Anastasi Bros. Corp. v. Commonwealth*, 455 Pa. 127, 315 A.2d 267 (1974). The parties agreed that the Commonwealth has been assessing and collecting additional tax only from those who underpay their tentative tax based on Method II, but not from those who underpay based on Method I. See Letter from Director, Bureau of Corporation Taxes, to Commerce Clearing House, Inc., January 27, 1972, CCH Pa. Tax Rptr. ¶ 13–401.70 at 1365–5. Molycorp had no taxable net income in 1972. Thus, had Molycorp used Meth-

od I to calculate its 1973 tentative tax, it would still have paid no tentative tax, but would not have been assessed additional tax.

■ The Act, however, requires payment of additional tax by all corporate taxpayers whose tentative tax payments are less than 95% of 90% of their final corporate net income tax, whether the taxpayer chooses Method I or Method II.[7] The Commonwealth may not systematically discriminate against taxpayers choosing Method II by assessing additional tax against them, while allowing taxpayers using Method I to escape the additional tax.

In *Cumberland Coal v. Board of Revision,* supra, the county board of revision was authorized to tax unmined coal in the county at a uniform percentage of the in-ground value of the coal. *Greene County Coal Tax Appeals,* 302 Pa. 179, 182, 152 A. 755, 756 (1930), rev'd sub nom. *Cumberland Coal Co. v. Board of Revision,* supra. The county board, however, assessed all unmined coal at the same rate per unit volume, despite the fact that some taxpayers' coal was much more valuable than others. The taxpayers' coal, though very difficult to mine, was assessed at the same rate as coal more readily accessible, and hence more valuable.

The Supreme Court of the United States held that "the intentional, systematic undervaluation by state officials of taxable property of the same class belonging to other owners contravenes the constitutional right of one taxed upon

7. The plain language of section 1(b) of the Act of 1971, formerly 72 P.S. § 3385(b) (text supra note 1), imposes additional tax upon all taxpayers who underpay by more than 5% tentative taxes imposed by section 1(a), not just Method II taxpayers. See 1 Pa.C.S.A. § 1921(b) (Supp.1978) (plain language rule). The history of the tentative tax provisions supports this conclusion. The predecessor of § 1(b) of the Act of 1971 imposed a similar additional tax, even though only Method I was then a permissible means for calculating tentative tax. Further, under section 3 of the Act of 1971, the additional tax provision became effective two years before use of Method II became permissible. See *Commonwealth v. Fluoro-Plastics, Inc.,* 28 Pa.Cmwlth. 520, 526 n.2, 368 A.2d 1328, 1331 n.2 (1977); 1 Pa.C.S.A. § 1921(c)(5).

the full value of his property." 284 U.S. at 28–29, 52 S.Ct. at 50. This discrimination was "none the less systematic and intentional because of belief in its validity" and good faith on the part of the taxing authorities. 284 U.S. at 25, 52 S.Ct. at 49.

Molycorp here presents a similar case. The Commonwealth has adopted a system for assessment and collection of the tentative and additional taxes which, without statutory or other authorization, discriminates against those choosing Method II for calculating tentative corporate net income tax. Compare *Commonwealth v. Westinghouse Electric Corp.*, supra (although some taxpayers received benefit of erroneous statement of policy in Tax Memorandum, taxpayer could not complain when memorandum was withdrawn after short time and correct policy instituted); *Stilman v. Tax Review Board*, supra (erroneous benefit given one taxpayer does not excuse others from paying the proper levy). The Commonwealth does not advance any reason to justify its pattern of enforcement. Molycorp therefore may not be assessed additional tax under this discriminatory enforcement scheme. E. g., *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931) (remedy for systematic discriminatory enforcement of tax law is relief to complaining taxpayer); *Cumberland Coal Co. v. Board of Revision*, supra (same).[8]

Accordingly, we reverse the order of the Commonwealth Court, and the settlement of additional tax against Molycorp is stricken.

LARSEN, J., concurs in the result.

**8.** Granting Molycorp relief of course does not preclude the Commonwealth from properly enforcing the additional tax provisions of the tentative corporate net income tax in the future. See *Commonwealth v. Westinghouse Electric Corp.*, supra (erroneous statement of taxing policy withdrawn); *Louis K. Liggett Co. v. Lee*, 288 U.S. 517, 540, 53 S.Ct. 481, 487, 77 L.Ed. 929 (1933) (Court denied prospective relief from a tax statute allegedly enforced discriminatorily because state might in the future properly enforce the statute).