403 A.2d 553

**COMMONWEALTH of Pennsylvania, Appellant, at No. 84**

**v.**

**BECK ELECTRIC CONSTRUCTION, INC., Appellant, at No. 80.**

Supreme Court of Pennsylvania.

Argued May 21, 1979.

Decided July 5, 1979.

Albert J. Tomalis, Jr., Harrisburg, for appellant in No. 80 and appellee in No. 84.

Paul S. Roeder, Deputy Atty. Gen., Dauphin, for appellee in No. 80 and appellant in No. 84.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Section 201(a) of the Tax Act of 1963 for Education imposes a "sales tax" upon "each separate sale at retail," to be "collected by the vendor from the purchaser" and "paid over to the Commonwealth."[1] Where no sales tax is collected and paid, Section 201(b) imposes a "use tax" upon the "use" of tangible personal property "purchased at retail."[2]

---

1. Section 201(a) of the Tax Act of 1963 for Education, Act of March 6, 1956, P.L. (1955) 1228, amended, Act of May 29, 1963, P.L. 49, § 7, 72 P.S. 3403–201(a) (1964), provides:

   "There is hereby imposed upon each separate sale at retail as defined herein within this Commonwealth a tax of five (5) per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided."

   The Act of January 1, 1968, P.L. (1967) 918, § 1 (effective immediately), changed the rate of tax from five to six per cent. Section 280 of The Tax Reform Code of 1971, Act of March 4, 1971, P.L. 47, 72 P.S. § 7280 (Supp.1978), repeals the Tax Act of 1963 for Education. Article II of the Code of 1971 adopts the sales and use tax the Act of 1963 imposed.

2. Section 201(b) provides:

   "There is hereby imposed upon the use, on and after the effective date of this act, within this Commonwealth of tangible personal property purchased at retail on or after March 7, 1956, and on

At the same time, however, "to eliminate tax 'pyramiding' otherwise caused in the typical situation of the middleman buying from the producer in order to sell to the retailer who in turn resells the product to the ultimate consumer," the Act excuses both sales and purchases for "resale." *Commonwealth v. Wetzel*, 435 Pa. 468, 471, 257 A.2d 538, 539 (1969). Though the Tax Act defines "sale at retail," "use," "purchase at retail," and "resale," it does not establish the tax consequences of all commercial transactions. Instead, the Legislature in Section 580(a) of the Act left to the Department of Revenue the authority "to prescribe, adopt, promulgate and enforce, rules and regulations not inconsistent with the provisions of this act." The Department, in an exercise of this authority, promulgated Regulation 150. This regulation prescribes when, under the Tax Act, a "construction contractor" is a "user" of goods subject to tax, and when the contractor is a "vendor" entitled to claim the "resale" exclusion.[3] Regulation 150 provides:

c. *Construction Activities Distinguished From Sales Activities.*—The following tests are applicable in determining whether property is used by a contractor in the performance of construction activities or is sold by him as a vendor:

Property which does not become a permanent part of the real estate and which is normally retained by the person owning it when he removes from the premises, is deemed to be sold by the person who furnishes and installs it, even

those services described herein purchased at retail on and after April 15, 1959, a tax of five (5) per cent of the purchase price, which tax shall be paid to the Commonwealth by the person who makes such use as herein provided, except that such tax shall not be paid to the Commonwealth by such person where he has paid the tax imposed by subsection (a) of this section or has paid the tax imposed by this subsection (b) to the vendor with respect to such use. The tax at the rate of five (5) per cent imposed by this subsection shall not be deemed applicable where the tax has been incurred at the rate of three per cent or three and one-half per cent or four per cent under this subsection prior to this amendment." The Act of January 1, 1968, see supra note 1, also changed the rate of use tax from five to six per cent.

3. Regulation 150 was amended after enactment of the Tax Reform Code of 1971. See supra note 1.

though it may, because of its nature, be connected to utility outlets or otherwise temporarily attached to real estate. Such property does not lose its identity by reason of its installation, and is not a permanent part of the building or structure in which it is installed."

The tax liability of an "electrical construction contractor" under Regulation 150 is the subject of these cross-appeals.

I

Beck Electric Construction, Inc. sells and installs electrical machinery and equipment. Since 1956, the Department of Revenue has licensed Beck a "vendor" entitled to claim the "resale" exclusion in transactions with suppliers. Between January 1, 1968 and December 31, 1970, Beck purchased from its suppliers quantities of electrical machinery and equipment, including transformers, a rectifier and switch-gear along with electronic clock and master sound systems. Beck claimed the resale exclusion and did not pay to the suppliers any sales tax. Pursuant to several "electrical construction contracts" with the Commonwealth's General Services Administration (GSA), Beck then sold the electrical equipment to GSA and installed it in several public facilities throughout the Commonwealth. Beck's contracts with GSA passed along to the GSA Beck's tax savings. And the GSA paid no sales or use tax to the Commonwealth. (Section 203 of the Tax Act provides that "[t]he tax imposed by section 201 shall not be imposed upon  .  .  .  (i) The sale at retail to, or use by  .  .  .  this Commonwealth or its instrumentalities.") The contracts between Beck and GSA were not subject to modification to permit Beck to charge for sales or use tax not previously imposed.

The Bureau of Taxes for Education assessed against Beck a use tax deficiency of $1,487.27 on the transformers, rectifier, switchgear, and the electronic clock and master sound systems. Beck petitioned the Bureau's Board of Review for reassessment. A hearing examiner concluded that these items "lose their identity as tangible personal property upon installation" and "become a permanent improvement to real

estate." The Board of Review agreed with the hearing examiner and refused to reassess tax liability on these items.[4] On Beck's petition for review, a majority of the Board of Finance and Revenue by order sustained the Board of Review. One member, the designee sitting for the State Treasurer, dissented.

Beck appealed de novo to the Commonwealth Court. Beck and the Commonwealth entered into a stipulation of facts, which included photographs of the items in dispute. A panel of the Commonwealth Court (per Crumlish, Jr., J.) was persuaded by the fact that the parties entered into "electrical construction contracts" and agreed that use tax was properly imposed under Regulation 150 on Beck's sale and installation of the transformers, rectifier, and switchgear. "They were installed pursuant to an electrical construction contract, and as is amply demonstrated by the photographs and documents in the record, were an integral part of the building's electrical system." 32 Pa.Cmwlth. 229, 240, 379 A.2d 626, 631 (1977). But the Commonwealth Court disagreed with the Board's imposition of use tax on the sale and installation of sound and master clock systems. "Aside from the fact that [the sound and master clock systems] were installed pursuant to an electrical construction contract, we find no evidence that they became or were intended to become a permanent part of the real estate as is required by Regulation 150." 32 Pa.Cmwlth. at 240–41, 379 A.2d at 631. Accordingly, the Commonwealth Court reduced the assessment by $455.30, the use tax on the clock and sound systems, and directed judgment of $1,031.97, the use tax on the transformers, rectifier, and switchgear. Beck appeals to this Court from the order directing judgment of $1,031.97; the Commonwealth appeals from the order insofar as it reduces judgment by $455.30.

4. The Board of Review did adopt the hearing examiner's recommendation to reassess in part to reflect an erroneous assessment on several items, including a "generator," "lamps," and a "drinking fountain." The Commonwealth did not and does not dispute this partial reassessment.

## II

■ The Commonwealth's claim that use tax liability was erroneously reduced by the amount assessed on the clock and master sound systems must be rejected. The parties' stipulation of facts reveals full agreement that

"clocks are either hook-fastened on a wall or mounted on the surface of a wall by detachable wall screws (surface mounted) or are 'flush mounted' by screws in a back-box contained in a rectangular 16½″ by 18¼″ cavity of a wall with depth of 4 inches. Appellant does not prepare the cavity. Appellant merely installed the clocks within such cavities. Whether hook-fastened, mounted on the wall or placed within said cavities, such clocks retain the same functional integrity and form as they were prior to installation. They can be easily removed to be repaired or replaced and the Master Clock can be removed to be re-set and this results in no damage to the clocks themselves or to the walls on which they are mounted. Hook-fastened as mentioned above means that a hook or opening on the back of said clock is laid against a wood screw in the wall to hang the clock in place.

[T]he sound Systems consist of microphones and speakers and consoles which are used in communications between one point in the system to all other points. The sound console and microphones are free-standing. Some of the speakers are mounted on the wall surface by screws. Other speakers are 'flush mounted' by screws in a back-box. Whether mounted on the wall or 'flush-mounted', such speakers retain the same functional integrity and form as they were prior to installation. They can be easily removed or replaced and this results in no damage to the speakers themselves or to the walls on which they are mounted."

Stipulation, Record at 8a–10a. Thus, there is no dispute that the clock and master sound systems are portable and conveniently installed, easily removed, and readily replaced. The parties further agree that both the clock and master sound systems retain their "functional integrity" after in-

stallation, and are not affected by removal or replacement. This agreed-upon degree of portability, without injury to the character of the goods, is common to each illustration found in Regulation 150 of a good "sold," and not "used" by a construction contractor. Regulation 150 lists the following examples of property "sold" by contractors and not "used:"

"(1) Furniture, radio sets, television sets, antennas, home refrigerators (not built-in type), dishwashers (not built-in type), clothes washers and dryers (not built-in type), portable lamps, home freezers, canvas awnings, venetian blinds, and portable appliances.

(2) Rugs and carpeting (including linoleum, etc.) which is not attached to the floor by adhesives or other permanent means, and which may be easily and readily taken up and removed.

(3) Office furniture and equipment, including office machines, desks, files and portable equipment and appliances.

(4) Machinery and equipment not permanently affixed to the real estate and not becoming a part thereof.

(5) Industrial and agricultural tools and appliances not permanently affixed to the real estate and not becoming a part thereof.

(6) Prefabricated cabinets, portable bleachers, laboratory tables, counters, lockers, and related items of equipment which are not attached to a structure except by hooks or other fasteners which are easily and readily removed.

(7) Gymnasium and athletic equipment which is portable.

(8) Blackboards which are not attached to a wall except by hooks or other fasteners which are easily and readily removed.

(9) Portable signs."

Like easily-removed rugs and carpeting, and prefabricated cabinets and blackboards attached by "hooks or other fasteners," so too the electronic clocks and master sound systems are goods easily and readily removed without affecting their character. The stipulation "binds the Commonwealth—as it

does the taxpayer . . . ." *Commonwealth v. Carheart Corp.*, 450 Pa. 192, 196, 299 A.2d 628, 630 (1973). Accord, *Commonwealth v. Molycorp, Inc.*, 481 Pa. 208, 212, 392 A.2d 321, 323 (1978); *Commonwealth v. Philadelphia Electric Co.*, 472 Pa. 530, 372 A.2d 815 (1977). In view of the stipulated facts, it must be concluded under Regulation 150 that Beck sold, and did not use, the clock and master sound system. The order of the Commonwealth Court is affirmed insofar as it reduces judgment by the amount of use tax assessed on the clock and master sound systems.

### III

■ We agree with Beck, however, that the Commonwealth Court erroneously sustained imposition of use tax on Beck's sale and installation of the transformers, rectifier, and switchgear. The Commonwealth Court placed unjustified emphasis upon the parties' negotiation of "electrical construction contracts." Mere formation of such a contract does not resolve the issue under Regulation 150 of whether a contractor is a vendor or user. And nothing precludes a party to an electrical construction contract from performing both functions. Indeed, Regulation 150 expressly states that a "contractor who, in addition to performing construction activities, makes sales at retail of tangible personal property is a vendor."

Nor does the fact that the "photographs and documents in the record" may suggest the transformers, rectifier, and switchgear were an "integral part of the building's electrical system" determine whether these components are "sold" or "used." Attention, instead, should have been directed to the parties' stipulation of facts. The Commonwealth agrees with Beck that the

> "transformers, rectifier and switchgear are of a character that they can be moved to other locations. These particular transformers, rectifier and switchgear have not been relocated. Appellant has moved identical transformers,

rectifiers and switchgear to other locations after they were initially installed in the same manner as the items here involved. The relocation of such items involves only the disconnection of cable clamps and screws, the extension of cable, the physical movement of such transformers, rectifier and switchgear and the 'final connection' of cable to them. When relocated, they would be installed by positioning them on similar concrete pads prepared by others than Appellant. There is no damage to the transformers, rectifier and switchgear or to the floor from which they are moved by reason of their relocation. After relocation, said transformers, rectifier and switchgear retain their original form and character and function as before their relocation."

Stipulation, Record at 8a. Thus, as in the case of the "clock and master sound systems," the parties are in agreement that the transformers, rectifier, and switchgear are easily removed and relocated. As the parties state, "relocation of such items involves only the disconnection of cable clamps and screws, the extension of cable, the physical movement . . . and the 'final connection' of cable." Removal and relocation do not damage the goods. "After relocation, [the items] retain their original form and character and function as before their relocation." The parties' agreement reveals that the transformers, rectifier, and switchgear are just as portable as any item illustrated in Regulation 150, and retain their "original form and character and function." Indeed, all that separates these items from the portable appliances listed in example (1) is the use of "clamps and screws," rather than simple plugs commonly associated with the appliances named in example (1). But the Regulation's inclusion, by way of example (4), of "machinery and equipment not permanently affixed to the real estate and not becoming a part thereof," makes clear that the kind of connection made to electrical sources is not controlling. The above examples demonstrate that what matters under Regulation 150 is the ease with which the property is disassociat-

ed from the realty. Here, too, the parties' stipulation "binds the Commonwealth." *Carheart*, supra. The Commonwealth Court's order upholding use tax liability on these items must be reversed.

## IV

■ Our conclusion that use tax may not be imposed on Beck's sale and installation of either the transformers, rectifier and switchgear or the clock and master sound systems is different from the conclusion reached by the Department of Revenue's Board of Review. Our courts must proceed with caution where the judgment of an administrative body properly interpreting its own regulation is at issue. As this Court stated in *State Dental Council and Examining Board v. Pollock*, 457 Pa. 264, 276, 318 A.2d 910, 917 (1974), "[t]he meaning to be given to terms of art in an agency regulation is particularly within the competence of that agency." See *United States v. Larionoff*, 431 U.S. 864, 876, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). Here, however, Beck exercised an appeal de novo to the Commonwealth Court and the parties stipulated to facts not necessarily before the Department. Our review, then, is of the Commonwealth Court's interpretation of Regulation 150 in light of the stipulated facts and in no respect disturbs the Department's view of its own Regulation. That stipulation requires reversal of the order of the Commonwealth Court insofar as it upholds assessment of use tax on Beck's sale and installation of transformers, a rectifier, and switchgear. In all other respects, the order of the Commonwealth Court is affirmed.[5]

Accordingly, the Order is affirmed in part and reversed in part.

EAGEN, C. J., dissents and would affirm the order of the Commonwealth Court.

---

5. Our disposition makes it unnecessary to address Beck's alternative claim that Regulation 150 is not in harmony with sales and use tax provisions of the Tax Act of 1963 for Education.