**GOLDEN EAGLE CONSTRUCTION COMPANY, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2002.
Decided Dec. 10, 2002.

Bryan E. Barbin, Johnstown, for petitioner.

Ronald H. Skubecz, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, J., LEAVITT, J., and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

Golden Eagle Construction Company, Inc. (Taxpayer) petitions for review of an order of the Board of Finance and Revenue (Board) denying Taxpayer's refund of use tax paid for stone and oil purchased to manufacture asphalt. The asphalt manufactured by Taxpayer was then used by Taxpayer to improve certain Pennsylvania highways pursuant to its contract with the Pennsylvania Department of Transportation (DOT). We affirm the Board.

Taxpayer is engaged in the business of manufacturing asphalt for retail sale. Taxpayer is also in the business of highway construction in which, not surprisingly, it uses its own asphalt. The manufacture of asphalt requires stone and AC–20 oil, and Taxpayer purchases these materials from different sources. Taxpayer does not pay a use tax on the purchase of stone or oil used to manufacture asphalt produced for retail sales.[1] However, when

---

1. Section 201(*o*)(4)(B)(i) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7201(*o*)(4)(B)(i) (Tax Reform Code). It states:

   That the term "use" shall not include—

   \* \* \*

   (B) The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor, and supplies or the obtaining of the services described in subclauses (2), (3) and (4) of this clause directly in the operations of—

   (i) The manufacture of tangible personal property.

Taxpayer's asphalt is used in a highway construction project, the Department of Revenue (Department) requires Taxpayer to pay a use tax upon the purchase of stone and oil.

During the period September 1996 through August 1999, Taxpayer entered into a number of highway improvement contracts with DOT. Indeed, these contracts were responsible for over 95% of Taxpayer's revenue. It is a standard term in DOT's highway construction contract that Taxpayer "furnish and *deliver all the materials* and [to] do and perform all work and labor in the improvement of a certain section of highway." Exhibit B, p. 5 (emphasis added). The Department requires all highway improvement contractors to pay a use tax on the materials purchased for use in DOT highway construction projects. Stipulation of Fact No. 8 (S.F.___). Accordingly, during the period in question, Taxpayer paid a use tax of $660,247.50 on its purchases of stone and oil materials used to produce the asphalt used in its highway construction projects for DOT.

During this same period, Taxpayer manufactured asphalt for retail sale. Taxpayer did not pay a sales or use tax on the stone and oil used in the process of manufacturing asphalt. However, Taxpayer collected a sales tax from the customer at the point of sale. During this period, whenev-er DOT made a direct purchase of asphalt from Taxpayer, a sales tax was not collected because DOT is exempt from the payment of sales tax in this and every other retail purchase.

To summarize, Taxpayer wears three hats: first, as a vendor of asphalt; second, as a manufacturer of asphalt; and third, as an installer of asphalt pursuant to a highway construction contract. The tax implications differ depending on the hat worn by Taxpayer in a particular transaction. As a vendor, Taxpayer collects a sales tax from its customers. As a manufacturer, Taxpayer is exempt from payment of sales or use tax on the raw materials used to produce asphalt.[2] As a construction contractor that installs asphalt, Taxpayer is the consumer of the materials it uses and pays a use tax.[3]

Taxpayer filed a petition with the Board of Appeals (BOA) for a refund of the use tax paid on stone and oil used in its construction projects for DOT. It claimed a refund on two theories. First, it claimed a manufacturing exemption because it used the stone and oil to manufacture asphalt. Second, Taxpayer claimed that under its highway improvement contract, it sold DOT asphalt, and DOT is exempt from sales tax. The BOA denied the refund.[4] The Taxpayer appealed the decision to the Board[5] and, again, was denied a refund.

2. However, when it sells its asphalt, it becomes a vendor and must collect the tax upon "sale at retail."

3. However, as is the case in every construction contract, the other party to the contract, does not pay a sales tax to the contractor.

4. The BOA attempted to verify whether the use tax was erroneously paid, as Taxpayer claimed. The BOA requested copies of invoices, contracts and copies of exemption certificates to support Taxpayer's claim for refund. Taxpayer informed the BOA at the hearing that it would not submit any of the requested documentation. Since Taxpayer failed to provide the requested documentation, the BOA held that it failed to meet its burden of proof required by Section 253(a) of the Tax Reform Code of 1971, Act of March 4, 1971, *as amended*, 72 P.S. § 7253 and denied the refund.

5. The Board also requested a submitted statement of the Taxpayer's asphalt manufacturing process, and copies of invoices, contracts and exemption certificates as requested by the BOA. Taxpayer declined, and the requested relief was denied by the Board for the reason that Taxpayer had not met its burden of proof

Taxpayer then petitioned for this Court's review.[6]

On appeal, Taxpayer identifies several grounds for a refund. As before the BOA and the Board, Taxpayer continues to press its theory that use tax on stone and oil is inappropriate because the final product, asphalt, was "sold" to DOT, which is exempt from sales tax, as part of Taxpayer's construction contract with DOT. The fact that the sale to DOT is not a stand alone transaction but part of a construction contract should not, in Taxpayer's view, result in a different tax outcome. In addition, Taxpayer contends that the tax violates the Pennsylvania and U.S. Constitutions because it is not uniformly applied. This argument is based upon the uncontroverted fact that other DOT highway construction contractors do not pay a use tax on stone they use to manufacture asphalt for DOT projects, where the contractors use their own stone instead of purchasing it.

Taxpayer denigrates the tax scheme it challenges as mere Department "policy." It contends that it is not logical to exempt DOT from the payment of sales tax when it directly uses Taxpayer's asphalt but not from the indirect payment of use tax when it enters into a construction contract with Taxpayer. Whether or not it is logical, this scheme is firmly grounded in statute.

■ Article II of the Tax Reform Code of 1971, Act of March 4, 1971, *as amended,*

72 P.S. §§ 7101–7282 (Tax Reform Code), distinguishes the activity of manufacturing from the activity of construction. While manufacturers enjoy an exemption from sales and use tax on materials used in their production, this exemption does not extend to materials consumed in a construction project that are affixed to real estate. Section 201(c) of the Tax Reform Code specifically provides that,

> The term *"manufacture"* shall not include *constructing, altering, servicing, repairing or improving real estate or repairing, servicing or installing tangible personal property,* nor the cooking, freezing or baking of fruits, vegetables, mushrooms, fish, seafood, meats, poultry or bakery products.

72 P.S. § 7201(c) (emphasis added). This definition governs the meaning of "manufacture" as used in the statutory provisions establishing the manufacturer's exemption from sales and use tax. The term "sale at retail" does not include

> (ii) such rendition of services or *the transfer of tangible personal property* including, but not limited to, machinery and equipment and parts therefore and supplies to be used or *consumed by the purchaser directly in the operations of—*
>
> (A) The *manufacture of tangible personal* property.

---

under Section 236 of the Tax Reform Code, 72 P.S. § 7236.

**6.** Our normal standard of review of governmental agency determinations does not apply to our review of decisions of the Board of Finance and Revenue. *Norris v. Commonwealth,* 155 Pa.Cmwlth. 423, 625 A.2d 179 (1993). When reviewing a decision of the Board, we have the broadest discretion because, although brought within our appellate jurisdiction, this Court hears the case *de novo. Consolidated Rail Corporation v. Common-*

*wealth,* 679 A.2d 303 (Pa.Cmwlth.1996), *aff'd,* 547 Pa. 453, 691 A.2d 456 (1997); *G.L. Marks Contracting v. Commonwealth,* 712 A.2d 816 (Pa.Cmwlth.1998), *aff'd,* 555 Pa. 559, 725 A.2d 756 (1999). The record in this case was established by stipulation of Petitioner and Respondent. As noted by Petitioner, whether or not Petitioner failed to provide the BOA or the Board certain invoices and contracts is of no moment in this proceeding because the record here is *de novo.*

Section 202(k)(8)(A) of the Tax Reform Code, 72 P.S. § 7202(k)(8)(A) (emphasis added). Similarly, the term "use" does not include

> *The use* or consumption *of tangible personal property,* including but not limited to machinery and equipment and parts therefore, and supplies or the obtaining of the services described in subclauses (2), (3) and (4) of this clause directly *in the operations of—*
>
> > (i) *The manufacture of tangible personal property.*

Section 201(*o*)(4)(B)(i) of The Tax Reform Code, 72 P.S. § 7201(*o*)(4)(B)(i) (emphasis added). Lest there any doubt, the Tax Reform Code twice recites that the manufacturing exclusion from sales and use tax does not apply to

> ... *materials, supplies or equipment to be used or consumed in the construction, reconstruction, remodeling, repair or maintenance of real estate* other than directly used machinery, equipment, parts or foundations therefore that may be affixed to such real estate.

72 P.S. § 7201(*o*)(4), 72 P.S. § 7201(k)(8) (emphasis added).

▋ The Tax Reform Code is plain: the manufacturing exemption does not apply to materials consumed in construction where those materials become affixed to real estate. When Taxpayer consumes stone and oil in its highway improvement projects, its exemption for the manufacture of asphalt has no force. This is because the term "manufacture" does not include the use of materials that became fixed to real estate, as is the case with Taxpayer's asphalt. Where the words of the statute are clear and free from ambiguity, we will not disregard them under the pretext of pursuing its spirit. *Oberneder v. Link Computer Corp.* 548 Pa. 201, 696 A.2d 148 (1997).

Taxpayer also argues that the Department's regulation found at 61 Pa.Code § 31.12 establishes that it is entitled to the manufacturing exemption for its construction activities. The regulation provides,

> (c) *Contractors producing the property they consume, as part of the same business operation.* Contractors who, as part of the same business operation, produce the property they consume shall conform with the following:
>
> > (1) A contractor, in addition to performing construction activities, may also manufacture, mine, process or grow the materials, supplies or equipment which he consumes in the performance of his construction activities. *With respect to his manufacturing, mining, processing, and the like, operations, the contractor is entitled to the exemption provided by the law for the operations.*

61 Pa.Code § 31.12(c)(1) (underlining added by Taxpayer). Taxpayer argues the underlined language grants an extension of the manufacturing exclusion for its construction activities. We disagree. The "exemption provided by law" does not apply to materials used in construction and affixed to real estate. Were we to accept Taxpayer's application of 31 Pa.Code § 31.12, the regulation would conflict with the statutory definition of "manufacture" and, thus, lack validity. *Moyer v. Berks County Board of Assessment,* 803 A.2d 833 (Pa.Cmwlth.2002).

Taxpayer next argues that the imposition of use tax on materials consumed in a construction contract subjects the Commonwealth to the indirect imposition of sales and use tax from which it is exempt. It argues that because its contract with DOT sets forth the specific tonnage of asphalt to be provided, the transfer of asphalt to DOT should be considered a "sale at retail."

In resolving this issue, we are guided by *Commonwealth v. Beck Electric Construction, Inc.* 32 Pa.Cmwlth. 229, 379 A.2d 626 (1977), *rev'd in part*, 485 Pa. 604, 403 A.2d 553 (1979). *Beck* involved a taxpayer whose business included both retail sales to and construction for a Commonwealth agency, the Department of General Services (DGS). The taxpayer challenged Regulations 207(2) and 150, now codified at 61 Pa.Code §§ 31.11–16, that made contractor liable for the payment of use tax on personal property used or consumed in the performance of construction contracts. The issue then, as now, was whether the installation of the materials, pursuant to a construction contract, was to be classified as a "use" of the materials by the contractor in fulfillment of its contract, or a "sale at retail." In *Beck*, the materials in question were installed to real estate pursuant to a construction contract with DGS, but the taxpayer claimed the materials transferred should be classified as a "sale at retail."[7] *Beck*, 379 A.2d at 628.

This Court affirmed the Department's regulation as an appropriate interpretation of the Tax Reform Code. It considered carefully the point made in this appeal by Taxpayer, *i.e.*, that a construction contract involves elements of both a "use" of materials and the "sale" of materials. This Court reasoned as follows,

The tax exclusion for sales at retail to the Commonwealth requires that a somewhat arbitrary distinction must be made because *a construction transaction necessarily contains elements of both*. The regulation which draws the line between "sales" and "uses" at the point at which the items become a permanent part of the real estate is logical, totally consistent with all portions of the statute and reflective of the legislative intent as revealed by other sections of the statute.... The meaning is indisputably clear. *Material which is "incorporated into and made a part of the real estate pursuant to a contract for the construction of such real estate" is considered to be "used" and not "sold."*

*Beck*, 379 A.2d at 629–630.

Under the principles established in *Beck*, Taxpayer is liable for the payment of use tax on tangible personal property, stone and oil, used or consumed in the performance of the construction contract because they become part of the real estate pursuant to the highway improvement projects. Further, under *Beck*, DOT's sales tax exemption[8] is irrelevant because

7. The focus of the inquiry rests with the incidence of tax established by statute. The current statute reads in relevant part,

(a) There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, . . .

(b) There is hereby imposed upon the use, on and after the effective date of this article, within this Commonwealth of tangible personal property purchased at retail on or after the effective date of this article, and on those services described herein purchased at retail on and after the effective date of this article, a tax of six per cent of the purchase price, which tax shall be paid to the Commonwealth by the person who makes such use as herein provided, except

that such tax shall not be paid to the Commonwealth by such person where he has paid the tax imposed by subsection (a) of this section or has paid the tax imposed by this subsection (b) to the vendor with respect to such use.

Section 202 of the Tax Reform Code, 72 P.S. § 7202.

8. The statute provides,

The tax imposed by section 202 shall not be imposed upon

\* \* \*

(12) the sale at retail to, or use by the United States, this Commonwealth or its instrumentalities or political subdivisions of tangible personal property or services.

Section 204(12) of the Tax Reform Code, 72 P.S. § 7204(12).

materials consumed by Taxpayer to improve highway are not a "sale at retail."

■ Finally, we consider Taxpayer's claim that the imposition of sales or use tax on its purchase of stone violates the Uniformity Clause of the Pennsylvania Constitution [9] because asphalt manufacturers who own quarries do not have to pay a tax on the use of their own stone.

■ A uniformity challenge is asserted more often than it succeeds. The legislature has wide discretion in matters of taxation, and there is a strong presumption that tax enactments are constitutionally valid. *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988); *Aldine Apartments v. Commonwealth*, 493 Pa. 480, 426 A.2d 1118 (1981). The burden is on the taxpayer to demonstrate that a classification made for the purpose of taxation is unreasonable, and tax legislation will not be declared unconstitutional unless it is *"clearly, palpably, and plainly* violates the Constitution." *Leonard v. Thornburgh*, 507 Pa. 317, 321, 489 A.2d 1349, 1351–1352 (1985) (emphasis in original). Further, uniformity does not require absolute equality and perfect uniformity. *Transcontinental Gas Pipe Line Corporation v. Commonwealth*, 153 Pa.Cmwlth. 60, 620 A.2d 614, 621 (1993). However, the difference in classification must be reasonable and non-arbitrary, and it must rest upon a difference that has a fair and substantial relationship to the object of the legislation so that all persons similarly circumstanced will be treated alike. *Snider v. Thornburgh*, 496 Pa. 159, 166, 436 A.2d 593, 596 (1981).

Taxpayer's uniformity challenge argues from our Supreme Court's holding in *Commonwealth v. Molycorp, Inc.*, 481 Pa. 208, 392 A.2d 321 (1978). In *Molycorp*, the applicable taxing statute permitted corporate taxpayers to calculate their "tentative tax" under two separate methods, each expressly authorized by statute. When the Department found that a tax calculated under Method II resulted in an underpayment, it assessed and collected additional tax. However, the Department took no action where it discovered an underpayment resulting from Method I. Our Supreme Court found the Department's actions discriminatory, holding that the Department lacked any statutory basis for collecting additional tax from one group of taxpayers but not from the other. The Department could not even advance a reason to support its pattern of enforcement. Thus, the Court set aside Molycorp's additional tax assessment.

By contrast, here the Department can advance a reason for the use tax imposed upon construction contractors who purchase stone but not upon those who use their own stone, and that reason has a statutory basis. Quite simply, a sales and use tax is triggered by a purchase at retail, and there is no "purchase" when a contractor uses its own stone. "Purchase at retail" is defined as an acquisition for a

---

Furthermore, Taxpayer's argument would allow contractors the discretion to determine the taxable nature of a construction contract merely by drafting artifices. This result would most assuredly be a violation of the Uniformity Clause of the Pennsylvania Constitution, n. 11 *infra.*, which requires that a classification be reasonable and non-arbitrary, resting on some ground of difference having a fair and substantial relationship to the object of the legislation so that all persons

similarly circumstanced will be treated alike. *Snider v. Thornburgh*, 496 Pa. 159, 166, 436 A.2d 593, 596 (1981).

9. It provides,

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws. PA. CONST. art. VIII, § 1.

consideration.[10] Similarly taxable "sales at retail" are transactions for consideration.[11] Taxpayer's *purchase* of the stone triggers the imposition of the tax. By contrast, contractors who own a quarry do not make a purchase of stone.

The imposition of tax based on whether a transaction involves a taxable purchase is not arbitrary or unreasonable; it is merely one classification out of many. Taxpayer has failed to demonstrate how this particular classification is so unreasonable as to "clearly, palpably, and plainly violate[s] the Constitution." *Leonard*, 507 Pa. at 321, 489 A.2d at 1351–1352. The distinction between contractors who purchase their stone and those who use their own stone, is rational under a statutory scheme intended to tax sales and purchases.

For these reasons, we affirm the decision of the Board of Finance and Revenue.

### ORDER

AND NOW, this 10th day of December, 2002, the order of the Board of Finance and Revenue, dated June 23, 2000, in the above-captioned matter is hereby affirmed and, unless exceptions are filed within thirty (30) days pursuant to Pa. R.A.P. 1571(i), the Chief Clerk shall enter judgment in favor of the Commonwealth.

10. Section 201(f)(1) of the Tax Reform Code, 72 P.S. § 7201(f)(1) states:

The acquisition for a consideration of the ownership, custody or possession of tangible personal property other than for resale by the person acquiring the same when such acquisition is made for the purpose of consumption or use, whether such acquisition shall be absolute or conditional, and by whatsoever means the same shall have been effected.

11. Section 201(k) of the Tax Reform Code, 72 P.S. § 7201(k) states:

1) Any transfer, for a consideration, of the ownership, custody or possession of tangible personal property, including the grant of a license to use or consume whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected.