# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Strongstown B&K Enterprises, Inc.,    :
                  Petitioner    :
                                      :
                  v.                :    No. 400 F.R. 2013
                                        :    Submitted: October 19, 2016
Commonwealth of Pennsylvania,    :
                  Respondent    :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE JULIA K. HEARTHWAY, Judge
                  HONORABLE JOSEPH M. COSGROVE, Judge

OPINION BY
JUDGE COHN JUBELIRER             FILED: December 21, 2016

      Strongstown B&K Enterprises, Inc. (Strongstown) has filed Exceptions pursuant to Rule 1571(i) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1571(i),[1] to this Court's May 20, 2016, Opinion and Order affirming the

---

[1] Rule 1571. Determinations of the Board of Finance and Revenue

                               * * *

      (i) Exceptions. Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect, for the purposes of Rule 1701(b)(3) (authority of lower court or agency after appeal) of an order expressly granting reconsideration of the determination previously entered by the court. Issues not raised on exceptions are waived and cannot be raised on appeal.

Pa. R.A.P. 1571(i).

Order of the Board of Finance and Revenue (BF&R) that granted in part and denied in part Strongstown's Petition for Reassessment of sales and use tax. Strongstown B&K Enterprises, Inc. v. Commonwealth (Pa. Cmwlth., No. 400 F.R. 2013, filed May 20, 2016) (en banc) (Strongstown I). Specifically, we concluded that BF&R correctly denied Strongstown any relief regarding the Department of Revenue's (Department) assessment of Pennsylvania's use tax on Road Signs installed and/or replaced by Strongstown. Id., slip op. at 11. In its Exceptions, Strongstown asserts this Court erred because "exclusions from tax" should be strictly construed against the Commonwealth, the Road Signs constitute a traffic control system, the Road Signs constitute "Building Machinery and Equipment" (BME), and the Court ignored the public policy implications of imposing sales or use tax on construction contractors installing road signs under contracts with the Commonwealth and its municipalities. After careful review, we deny the Exceptions.

## I.      Background

The underlying facts, stipulated to by the parties and set forth fully in Strongstown I, need not be restated here. For the present analysis, it is sufficient to note that Strongstown through construction contracts sold fabricated aluminum road signs, posts, and associated miscellaneous hardware (collectively "Road Signs") to the Pennsylvania Department of Transportation (PennDOT) and to municipalities. (Stip. ¶¶ 7, 13, 20.) The Road Signs were installed on Pennsylvania roads, including the Pennsylvania Turnpike. (Stip. ¶ 20.) Strongstown paid tax on concrete sign foundations and related components, such as the sleeves or brackets inserted into the foundations. (Stip. ¶ 14.) Strongstown

purchased the Road Signs from various vendors but did not pay sales tax to those vendors, and Strongstown used the Road Signs by installing them along Pennsylvania roads in order to satisfy its obligations under various construction contracts. (Stip. ¶¶ 20, 23.) Strongstown is a construction contractor, and all of the Road Signs installed during the audit period were installed for the Commonwealth through either PennDOT or Pennsylvania municipalities. (Stip. ¶¶ 30, 31.)

The Department performed a sales and use tax audit on Strongstown for the period from January 1, 2008 through January 31, 2011. (Stip. ¶ 4.) Based on the audit, the Department issued an assessment to Strongstown totaling $2,056,339.26, of which $321,653.86 was unpaid sales tax and $1,734,685.40 was unpaid use tax; there was also $803,118.26 in penalties and interest, and thus the total amount due was $2,859,457.52. (Stip. ¶ 5, Ex. A.) Strongstown filed a Petition for Reassessment with the Department's Board of Appeals, seeking relief from $625,809.21 of the use tax assessed on Road Signs furnished and installed under contracts with PennDOT and with municipalities. (Stip. ¶¶ 6-7, Ex. B.) After a hearing, the Board of Appeals abated the *penalties* by $616,901.71 but denied Strongstown any *tax relief*. (Stip. ¶ 9, Ex. C.) Strongstown appealed to the BF&R, which denied relief. (Stip. ¶¶ 10-11, Exs. D, E.)

On appeal to this Court,[2] the parties stipulated that the only question at issue was whether Pennsylvania's use tax was properly assessed on the Road Signs

---

[2] Our review of a BF&R determination is governed by Rule 1571 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1571, which authorizes this Court to rule on the record made before it or on the stipulation of facts made by the parties. In this circumstance we exercise the broadest scope of review, E. Diversified Metals Corp. v. Commonwealth, 297 A.2d 167 (Pa. Cmwlth. 1972), because, "[a]lthough this Court hears such cases in its appellate jurisdiction, 42 Pa. C.S. § 763, this Court functions essentially as a trial court." PICPA Found. for Educ. and
**(Footnote continued on next page…)**

3

installed and/or replaced by Strongstown.[3]  (Stip. ¶ 13.)  The Court examined

Section 202(b) of the Tax Reform Code of 1971 (Code),[4] 72 P.S. § 7202(b), which

imposes a six percent tax on the *use* within the Commonwealth of tangible

personal property purchased at retail, and the definition of "use" in Sections

**(continued…)**

Research v. Commonwealth, 598 A.2d 1078, 1080 n.6 (Pa. Cmwlth. 1991) (citations omitted). The stipulation of facts is binding and conclusive upon this Court, but we may draw our own legal conclusions from those facts.  Kelleher v. Commonwealth, 704 A.2d 729, 731 (Pa. Cmwlth. 1997).  The issue presented in this case poses a question of statutory construction, for which our review is plenary.  Malt Beverages Distrib. Ass'n v. Pa. Liquor Control Bd., 918 A.2d 171, 175 (Pa. Cmwlth. 2007), aff'd, 974 A.2d 1144 (Pa. 2009).

[3] The parties stipulated further that if we found that the use tax was imposed improperly on the Road Signs, Strongstown should be reassessed at $192,349.86, plus applicable interest, and if we found that the use tax was properly imposed, then Strongstown should be reassessed at $818,159.07, plus applicable interest.  (Stip. ¶¶ 32, 33.)

[4] Section 202 of the Code provides, in pertinent part:

Imposition of tax

(a) There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

(b) There is hereby imposed upon the use, on and after the effective date of this article, within this Commonwealth of tangible personal property purchased at retail on or after the effective date of this article, and on those services described herein purchased at retail on and after the effective date of this article, a tax of six per cent of the purchase price, which tax shall be paid to the Commonwealth by the person who makes such use as herein provided, except that such tax shall not be paid to the Commonwealth by such person where he has paid the tax imposed by subsection (a) of this section or has paid the tax imposed by this subsection (b) to the vendor with respect to such use.  The tax at the rate of six per cent imposed by this subsection shall not be deemed applicable where the tax has been incurred under the provisions of the "Tax Act of 1963 for Education."

72 P.S. § 7202(a), (b).

4

201(o)(1) and (17) of the Code.[5]  By virtue of the Stipulation and the plain language of the Code, there was no dispute that Strongstown is a construction contractor that purchased tangible personal property to use in Pennsylvania in satisfaction of its obligations under various construction contracts.  However, Strongstown argued that the Road Signs are exempt as BME, which is defined in Section 201(pp) of the Code as follows:

(pp) BUILDING MACHINERY AND EQUIPMENT.

Generation equipment, storage equipment, conditioning equipment, distribution equipment and termination equipment, **which shall be limited to the following**:

(1)  air conditioning limited to heating, cooling, purification, humidification, dehumidification and ventilation;
(2)  electrical;
(3)  plumbing;
(4)  communications limited to voice, video, data, sound, master clock and noise abatement;
(5)  alarms limited to fire, security and detection;
(6)  **control system limited to** energy management, **traffic and parking lot and building access**;

---

[5] Section 201(o)(1) and (17) of the Code provides, in pertinent part:

(1) The exercise of any right or power incidental to the ownership, custody or possession of tangible personal property and shall include, but not be limited to transportation, storage or consumption.

\* \* \*

(17) The obtaining by a **construction contractor of tangible personal property** or **services provided to tangible personal property which will be used pursuant to a construction contract whether or not the tangible personal property or services are transferred**.

72 P.S. § 7201(o)(1) and (17) (emphasis added). Subsection (o)(17) was added by Section 1 of the Act of April 23, 1998, P.L. 239, No. 45 ("Act 45").

(7) medical system limited to diagnosis and treatment equipment, medical gas, nurse call and doctor paging;
(8) laboratory system;
(9) cathodic protection system; or
(10) furniture, cabinetry and kitchen equipment.

**The term shall include** boilers, chillers, air cleaners, humidifiers, fans, switchgear, pumps, telephones, speakers, horns, motion detectors, dampers, actuators, grills, registers, **traffic signals**, sensors, card access devices, **guardrails**, medial devices, floor troughs and grates and laundry equipment, together with integral coverings and enclosures, whether or not the item constitutes a fixture or is otherwise affixed to the real estate, whether or not damage would be done to the item or its surroundings upon removal or whether or not the item is physically located within a real estate structure. The term "building machinery and equipment" **shall not include guardrail posts,** pipes, fittings, pipe supports and hangers, valves, underground tanks, wire, conduit, receptacle and junction boxes, insulation, ductwork and coverings thereof.

72 P.S. § 7201(pp) (emphasis added).

This definition lists five general equipment types but then limits the definition to such equipment as is listed in the ten specific subsections that follow ("which shall be **limited** to the following"). Comparing the stipulated "definition" of Road Signs ("fabricated aluminum road signs, posts, and accompanying miscellaneous hardware"), with the language in Section 201(pp) of the Code, we concluded that the Road Signs do not appear to fall within one of the five general types of equipment listed in the definition of BME, which are generation, storage, conditioning, distribution, or termination. Strongstown I, slip op. at 6. In addition, we held that the Road Signs are not specifically listed as included within the definition in the last paragraph as are, for example, traffic signals. Id.

Strongstown argued that the Road Signs fall within subsection 6 of Section 201(pp), 72 P.S. § 7201(pp)(6), which defines BME in relevant part as a "control

6

system limited to energy management, traffic and parking lot and building access." Strongstown posited that since the Road Signs work together to control traffic, they are a "control system" for traffic, and thus exempt from the use tax as they are BME.

Section 201(pp)(6) of the Code describes BME as including "a **control system** limited to . . . traffic . . . .," id., and the term "system" is defined as "a group of devices or artificial objects forming a network or used for a common purpose," Webster's Third New International Dictionary 2322 (2002). However, we found no evidence or stipulated facts regarding where specifically these Road Signs were placed and how, beyond Strongstown's general suggestion in its brief, the Road Signs work together to control traffic, and thus found no evidence in the record to support a finding that the Road Signs at issue are a control *system*. Strongstown I, slip op. at 7. There was no evidence that they work together, are in a network either with each other or with other traffic devices, or, are electrically networked with other traffic devices to control traffic. Accordingly, we agreed with BF&R that the Road Signs did not fit within the statutory term "control system" as required. Id.

Alternatively, Strongstown argued that the Road Signs should be considered tangible personal property even after they are installed because they are often damaged and/or subject to wear and are replaced. (Stip. ¶ 22.) In addition, the Road Signs are easily removed from the concrete foundations, bases and fitted sleeves into which the Road Signs are installed. Relying on Commonwealth v. Beck Electric Construction, Inc., 403 A.2d 553 (Pa. 1979) (tangible personal property, as opposed to real property, is not subject to sales or use tax), and Section

7

204(12) of the Code, 72 P.S. § 7204(12),[6] Strongstown contended they stand for the proposition that items of tangible personal property sold to a tax-exempt entity such as the Commonwealth are not subject to sales or use tax. Strongstown further argued that it purchased the Road Signs from its vendors for purposes of resale to the Commonwealth, and thus they were not taxable as "purchases for resale" under Section 201(k) of the Code, 72 P.S. § 7201(k),[7] (only "sales at retail" are subject to

---

[6] Section 204(12) of the Code states:

Exclusions from tax

The tax imposed by section 202 shall not be imposed upon any of the following:
* * *
(12) The sale at retail to, or use by the United States, this Commonwealth or its instrumentalities or political subdivisions of tangible personal property or services.

72 P.S. § 7204(12).

[7] Section 201(k) of the Code provides the following definition:

The following words, terms and phrases when used in this Article II shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning:
* * *
(k) "SALE AT RETAIL."

(1)     Any transfer, for a consideration, of the ownership, custody or possession of tangible personal property, including the grant of a license to use or consume whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected.
(2) The rendition of the service of printing or imprinting of tangible personal property for a consideration for persons who furnish, either directly or indirectly the materials used in the printing or imprinting.
(3) The rendition for a consideration of the service of--
(i) Washing, cleaning, waxing, polishing or lubricating of motor vehicles of another, whether or not any tangible personal property is transferred in conjunction therewith; and

**(Footnote continued on next page…)**

sales or use tax, and purchases for resale are always excluded from sales and/or use tax).

However, the Court had previously found these alternative arguments unpersuasive in Kinsley Construction, Inc. v. Commonwealth, 894 A.2d 832, 835 (Pa. Cmwlth. 2006) (the sales and use tax exclusion for construction contractors is now limited to building machinery and equipment as set forth in Section 204(57) of the Code and, further, that the Section 204(12) exemption is no longer available to construction contractors) and Plum Borough School District v. Commonwealth, 860 A.2d 1155, 1159 (Pa. Cmwlth. 2004), aff'd per curiam, 891 A.2d 726 (Pa. 2006) (a construction contractor that contracts with an exempt entity is liable for tax on all property it purchases unless the property constitutes BME under Section 204(57) of the Code, 72 P.S § 7204(57)).[8]  The Plum Borough Court had also

_____

**(continued…)**

        (ii)    Inspecting motor vehicles pursuant to the mandatory requirements of "The Vehicle Code."

(4) The rendition for a consideration of the service of repairing, altering, mending, pressing, fitting, dyeing, laundering, drycleaning or cleaning tangible personal property other than wearing apparel or shoes, or applying or installing tangible personal property as a repair or replacement part of other tangible personal property except wearing apparel or shoes for a consideration, whether or not the services are performed directly or by any means other than by coin-operated self-service laundry equipment for wearing apparel or household goods and whether or not any tangible personal property is transferred in conjunction therewith, except such services as are rendered in the construction, reconstruction, remodeling, repair or maintenance of real estate: Provided, however, That this subclause shall not be deemed to impose tax upon such services in the preparation for sale of new items which are excluded from the tax under clause (26) of section 204, or upon diaper service.

72 P.S. § 7201(k).

[8] Section 204(57) of the Code states, in pertinent part:

The tax imposed by section 202 shall not be imposed upon any of the following:
**(Footnote continued on next page…)**

addressed Strongstown's argument that the Road Signs were not taxable under Beck Electric as follows:

> The definition of "use" found in Section 201(o)(17) of the Code, 72 P.S. § 7201(o)(17), which was added by Act 45 in 1998, provides that the term "use" includes obtaining by construction contractors tangible personal property or services which would be used pursuant to a construction contract, whether or not the tangible personal property is transferred. Accordingly, because under Section 202(a) of the Code the tax is imposed on "use" of the property, a construction contractor who contracts with an exempt entity such as the School District is now liable for tax on all property the contractor purchases unless the property constitutes building machinery and equipment.

Plum Borough, 860 A.2d at 1159-60. Given the holdings in Plum Borough and in Kinsley, and our conclusion that these Road Signs are not BME, we could not accept Strongstown's arguments that it is exempt from use tax because the Road Signs are tangible personal property and sales for resale. Strongstown I, slip op. at 11.

---

**(continued…)**

\* \* \*

(57) The sale at retail to or use by a construction contractor of building machinery and equipment and services thereto that are:

(i) transferred pursuant to a construction contract for any charitable organization, volunteer firemen's organization, volunteer firefighters' relief association, nonprofit educational institution or religious organization for religious purposes, provided that the building machinery and equipment and services thereto are not used in any unrelated trade or business; or

(ii) transferred to the United States or the Commonwealth or its instrumentalities or political subdivisions.

72 P.S. § 7204(57).

Finally, Strongstown argued that sound public policy requires that items sold to the Commonwealth to be used on or near highways should not be subject to sales or use tax. Strongstown contended that where highway contracts are being paid for by the taxpayers, it makes no sense to impose a tax that would increase the cost of contracts between the Commonwealth and construction companies that do the work on the Commonwealth's highways. We held, however, that we are bound by the plain language of the Code and by our previous decisions interpreting the Code, and that Strongstown's policy argument thus should be directed to the General Assembly. Id.

We therefore held that the Department properly assessed the use tax on the Road Signs and affirmed BF&R's Order and remanded this matter to the BF&R to reassess Strongstown's use tax in accordance with the parties' Stipulation unless exceptions were filed within 30 days per the provisions of Rule 1571(i), Pa. R.A.P. 1571(i).

## II.    Exceptions

Strongstown filed Exceptions on May 26, 2016, in which it asserts this Court erred: (1) by failing to consider certain stipulated facts that supported the conclusion that the Road Signs are a traffic control system; (2) by failing to consider Section 204(57) of the Code as an "exclusion from tax" rather than an "exemption from tax" and in determining that the Road Signs were not BME under Section 201(pp)(6) of the Code subject to that exclusion; and (3) by ignoring the public policy implications of imposing sales or use tax on construction contractors installing road signs under contracts with the Commonwealth and its

11

municipalities.[9]    (Exceptions ¶¶ 1-7.)    We will address these alleged errors seriatim.

**A**.    Strongstown asserts that we failed to consider stipulated facts that should lead to the conclusion that the Road Signs are a Traffic Control System.  In our May 20, 2016 Opinion, we reviewed the stipulation and explained as follows:

> Based upon the paragraphs in the Stipulation that contain a description of the Road Signs and their characteristics, we concluded that the Road Signs: are "fabricated aluminum road signs, posts, and accompanying miscellaneous hardware" that are "often damaged and/or subject to wear and are therefore often replaced." (Stip. ¶¶ 7, 22.)   Beyond these statements, the only other evidence in the Stipulation regarding the Road Signs and their characteristics are copies of photographs depicting directional signs, a speed limit sign, a "no turn on red" sign and a "stop here on red" sign, a "no left turn" sign and a stop sign.  (Stip. Ex. H.)  We found no evidence or stipulated facts regarding where specifically these Road Signs were placed and how, beyond Strongstown's general suggestion in its brief, the Road Signs work together to control traffic.

> Section 201(pp)(6) of the Code describes BME as including "a control system limited to . . . traffic . . . ."  The term "system" is defined as "a group of devices or artificial objects forming a network or used for a common purpose."  Webster's Third New International Dictionary 2322 (2002).  Again, we found no evidence in the record to support a finding that the Road Signs at issue are a control system. **There is no evidence that they work together, are in a network either with each other or with other traffic devices, or, are electrically networked with other traffic devices to control traffic.**

Strongstown I, slip op. at 7 (emphasis added).

---

[9] We have reordered the exceptions for clarity.

In its Exceptions, Strongstown argues that we did not consider that the Commonwealth auditor called the Road Signs "traffic control signage" (Stip. ¶ 8; Exception ¶ 2.) While we did not list specifically each paragraph of the Stipulation in our analysis, we considered the Stipulation in its entirety. The parties stipulated that the "auditor stated in the Narrative Report of Audit Findings that 'Strongstown contracted with various municipalities to supply and install traffic control signage.'" (Stip. ¶ 8.) This description of the Road Signs as "traffic control *signage*" does not support a finding that the Road Signs are a "traffic control *system*." Signs are not a system, particularly where "[t]here is no evidence that they work together, are in a network either with each other or with other traffic devices, or, are electrically networked with other traffic devices to control traffic." Strongstown I, slip op. at 7.

Strongstown next argues that $625,809.21 in use tax was assessed on the Road Signs (Stip. ¶ 7), which indicates sign sales exceeding $10,000,000, and that "[s]uch a large amount of sign sales indicates a system of signs." (Exception ¶ 3.) However, the number of signs that were sold is not indicative of whether "the signs work together, are in a network either with each other or with other traffic devices, or, are electrically networked with other traffic devices to control traffic" and would be considered a "system." Strongstown I, slip op. at 7. Finally, Strongstown argues that we failed to consider the photographs of the Road Signs (Stip. Ex. H), as evidence that the signs work together as a system. (Exceptions ¶ 4.) However, we did specifically reference in our prior analysis, the photographs of the Road Signs set forth in Stipulation Exhibit H. Strongstown I, slip op. at 7.

These photographs of individual signs[10] are not evidence of a system. We, therefore, deny these Exceptions based on the contents of the Stipulation.


**B.** Strongstown next argues that the Road Signs are BME under Section 201(pp) and, therefore, should be an exclusion from tax and strictly construed against the Commonwealth pursuant to Section 204(57), and not an exemption from tax. (Exceptions ¶¶ 1, 5-6.) Strongstown contends that Section 204(57) provides an "Exclusion from Tax" for "[t]he sale at retail to or use by a construction contractor of [BME] and services thereto that are . . . transferred to the United States or the Commonwealth or its instrumentalities or political subdivisions." 72 P.S. § 7204(57). It argues that we erred in our earlier opinion by not finding it to be an exclusion from tax and therefore not strictly construing it against the Commonwealth.

We have reexamined our initial decision and our decision in Plum Borough, and discern no error in either. In Plum Borough, we stated as follows:

> We note that the title of Section 204 denominates its contents as "exclusions from tax" and not "exemptions from tax." Exemptions are items which are within the scope of the general language of the statute imposing the tax, Commonwealth v. Sitkin's Junk Company, . . . 194 A.2d 199 ([Pa.] 1963), while "exclusions are items which were not intended to be taxed in the first place." Rossi v. Commonwealth of Pennsylvania, . . ., 342 A.2d 119, 122 ([Pa. Cmwlth.] 1975). The legal effect of that distinction is that exemptions are to be strictly construed against the taxpayer; exclusions are to be construed against the taxing body. Equitable Gas Co. v. Commonwealth of Pennsylvania, . . . 335 A.2d 892 [(Pa. Cmwlth.)], affirmed, . . . 347 A.2d 674 ([Pa.] 1975). However, "Whether a taxing provision is an 'exemption' . . . or an 'exclusion' . . . is not controlled by what it is called, but by its

---

[10] There are 10 pictures of individual Road Signs, such as "STOP HERE ON RED," "NO TURN ON RED," "STOP," directional signs, and a speed limit sign. (Stip. Ex. H.)

14

language and the effect of that language." Adelphia House Partnership v. Commonwealth of Pennsylvania, 709 A.2d 967, 970 (Pa. Cmwlth. 1998). The current Section 204 of the Tax Code is derived from and supplants the former Section 203 of what was known as the Selective Sales and Use Tax Act, Act of March 6, 1956, P.L. (1955-56) 1228, as amended, formerly 72 P.S. § 3403-203 (Tax Act). Although, like Section 204, Section 203 of the predecessor Tax Act was entitled "Exclusions to tax," these "exclusions" were generally interpreted to constitute "exemptions" from taxation for items that would otherwise be considered "tangible personal property." Adelphia. Moreover, Section 204 of the Code, 72 P.S. § 7204, has also been consistently interpreted as setting forth exemptions to taxation. See Adelphia, 709 A.2d at 970. Additionally, specific to this case, the sale at retail or use of [BME] is normally within the scope of the general language of the tax code imposing the tax. It is not subject to sales tax *only when* it is sold or used by a construction contractor and the building and machinery has been transferred to one of the specified exempt entities. **Because Section 204(57) creates an exemption and not an exclusion from taxation, that section must be strictly construed against the [taxpayer].**

Plum Borough, 860 A.2d at 1159 n.4 (emphasis added).

Strongstown also reasserts its earlier argument that the Road Signs are BME under Section 201(pp) because they should be considered a "control system" for "traffic" where, like traffic signals, guardrails and other items explicitly defined as BME, they control traffic. Strongstown asserts that "[t]here is no logic behind the Commonwealth's position that the Legislature intended to provide a tax exclusion for traffic signals, guardrails, and medial devices, but not for Road Signs." (Strongstown's Br. in Support of Exceptions at 21.) However, the Legislature did not specifically list "traffic signs" as they did "traffic signals." See, e.g., Kinsley, 894 A.2d at 836 ("We are constrained to agree with the Commonwealth that, had the legislature intended sound barriers to be considered [BME], they would have been included in the lengthy definition."). As we could find no record evidence

15

that would support the conclusion that the Road Signs work together to control traffic as a system, we must deny these Exceptions.

**C.** Strongstown, in its last Exception, reprises its argument that sound public policy requires that items sold to the Commonwealth to be used on or near highways should not be subject to sales or use tax. (Exceptions ¶ 7.) Because those highway contracts are being paid for by the taxpayers, Strongstown contends that it does not make sense to impose a tax that would increase the cost of contracts between the Commonwealth and construction companies that do the work on the Commonwealth's highways. As with its argument regarding BME, Strongstown reiterates the arguments it made in its earlier brief. In response to those arguments, we held that we are bound by the plain language of the Code and by our previous decisions interpreting the Code, and that Strongstown's policy argument thus should be directed to the General Assembly. Strongstown I, slip op. at 11. Strongstown offers us no reason to reconsider that conclusion, and we will deny this Exception.

## III.   Conclusion

As we conclude that Strongstown's assignments of error through the Exceptions are not supported by the Code, our decisions or the stipulated record, we deny the Exceptions.

_____
**RENÉE COHN JUBELIRER,** Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Strongstown B&K Enterprises, Inc.,     :
             Petitioner     :
             :
         v.             :    No. 400 F.R. 2013
             :
Commonwealth of Pennsylvania,     :
             Respondent     :

## O R D E R

AND NOW, this 21st day of December, 2016, the Exceptions filed by Strongstown B&K Enterprises, Inc. (Strongstown) are **DENIED**. This matter is remanded to the Board of Finance and Revenue to reassess Strongstown's use tax in accordance with the parties' Stipulation filed with this Court.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge