Van Industries, Inc.,                          :
                          Petitioner            :
                                                :
          v.                                    :
                                                :
Commonwealth of Pennsylvania,                   :          No. 861 F.R. 2015
                          Respondent            :          Argued: June 3, 2019

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                     FILED:  June 21, 2019


          Van Industries, Inc. (Taxpayer) petitions this Court for review of the
Board of Finance and Revenue's (Board) December 2, 2015 order denying
Taxpayer's Petition for Reassessment (Petition).  The sole issue before this Court is
whether the Board properly denied Taxpayer's exemption.  After review, we affirm.


## Facts[1]

          Taxpayer is a Pennsylvania "S" corporation located at 2 Industrial Drive,
Birdsboro, Pennsylvania.  Taxpayer is engaged in the business of: (i) metal and
ceramic fabrication; (ii) customized metal part machining and industrial metal repair;
(iii) powder coating customer parts and those Taxpayer fabricates; and (iv)
maintenance and cleaning of customer parts.  The Department of Revenue
(Department) conducted a sales and use tax audit of Taxpayer's business (Audit) for
the period January 1, 2011 through March 31, 2014 (Audit Period).  During the Audit

---

[1] The parties stipulated to the facts and filed the stipulation with this Court on December 6, 2018.  *See* Joint Stipulation of Facts.

Period, Taxpayer used natural gas to heat its facility and to operate two ovens. The ovens were used to: (i) cure powder-coated parts; and (ii) burn powder and contaminants off of parts.

The amount of natural gas associated with heating Taxpayer's facility fluctuates with the outside temperature. During the Audit, Taxpayer claimed that its natural gas purchases were 100% exempt from sales or use tax for the Audit Period and, thus, it paid no tax on those purchases. In support of the claimed 100% exemption, Taxpayer provided the Department with a document that Taxpayer created, which purported to summarize Taxpayer's exempt natural gas usage (Audit Utility Documentation) over one unspecified month. Therein, Taxpayer averred that its ovens consumed 97% of the natural gas it purchased in performing powder-coating or burn-off services.

The Department determined that the Audit Utility Documentation was insufficient to establish the percentage of natural gas that was not subject to tax. On or about August 25, 2014, the Department assessed Taxpayer $31,218.01 in taxes, plus interest and penalties. Of that $31,218.01 tax assessment, $2,548.58 was assessed on Taxpayer's natural gas purchases during November, December, January, February, and March of each year of the Audit Period (Utility Assessment). *See* Joint Stipulation of Facts (Stipulation), ¶14. The Department did not assess a tax for any other natural gas purchases.

On October 7, 2014, Taxpayer timely filed a petition for reassessment with the Board of Appeals (BOA) seeking relief from the Utility Assessment, claiming an exemption rate of 88.15% for natural gas purchases. On October 28, 2014, the BOA sent Taxpayer correspondence requesting that Taxpayer:

> Please provide a complete and detailed description of your business. Starting with when the part is received up to the completed product. The narrative must describe each piece of machinery, equipment, and other items claimed to be

2

directly related to the production process and the direct causal relationship between these items and the product.

Stipulation, ¶17.

On January 9, 2015, the BOA sent additional correspondence to Taxpayer requesting a breakdown of the type of work it performs during the winter months because Taxpayer had averred:

> The nature of [Taxpayer's] powder coating work is very busy in the months December through April, with burning off paint from various race[]car chassis[], lawn furniture, etc. and recoating them. The summer months work[]load consists of custom parts [Taxpayer] markets as an [original equipment manufacturer (]OEM[)] supplier and whatever work comes in as a job shop.

Stipulation, ¶18. On March 18, 2015, after notice and hearing, the BOA mailed Taxpayer a decision denying its requested relief from the Utility Assessment.

On June 15, 2015, Taxpayer filed the Petition with the Board requesting relief from the Utility Assessment portion of the Audit assessment and claiming an exemption rate of 88.15% for natural gas purchases. In the Petition, Taxpayer averred, *inter alia*:

> Since [Taxpayer's] inception back in October[] 1991, [we were] and continue[] to be a business that experiences highs and lows in workload based on the seasons. Starting from our company's beginning, we have been recognized as the best company to take chassis to for professional and expert powder coating. Our customers will attest to our reputation and the months in which we receive the majority of chassis frame[s] for powder coating.
>
> As expressed in this appeal, the winter months bring in chassis from the midget, sprint, dragster, go-cart and micro sprint car market[s].

Stipulation, ¶22. On December 2, 2015, the Board denied Taxpayer relief.

3

On December 29, 2015, Taxpayer appealed to this Court.[2] On January 5, 2018, Taxpayer informed the Commonwealth of Pennsylvania (Commonwealth) that it commissioned a professional utility study. By January 16, 2018 order, after four status reports,[3] this Court scheduled a status/conference for August 6, 2018. By August 7, 2018 order,[4] this Court directed the parties to file, *inter alia*, the Stipulation. On December 7, 2018, the parties filed the Stipulation.[5] As of December 5, 2018, Taxpayer had not provided the Commonwealth with a utility study or detailed, supported information about Taxpayer's business operations.[6]

**Background**

Section 202 of the Tax Reform Code of 1971 (Tax Code)[7] imposes a tax on "each separate sale at retail of tangible personal property . . . ," 72 P.S. § 7202(a), as well as a tax "upon the use . . . within this Commonwealth of tangible personal property purchased at retail . . . ." 72 P.S. § 7202(b). Section 201 of the Tax Code defines "tangible personal property" to include "natural . . . gas for non-residential use[.]" 72 P.S. § 7201(m). However, the Tax Code's definitions of "sale at retail" and "use" exclude machinery, equipment, parts, and supplies consumed directly in

---

[2] "In appeals from decisions of the [Board], our review is *de novo* because we function as a trial court even though such cases are heard in our appellate jurisdiction." *DS Waters of Am., Inc. v. Commonwealth*, 150 A.3d 583, 588 n.7 (Pa. Cmwlth. 2016).

[3] By November 17 and December 27, 2016, and May 8, June 1 and September 20, 2017 orders, this Court directed the parties/Taxpayer to file status reports. Taxpayer filed status reports on December 19, 2016, May 29 and September 19, 2017, and the parties filed a Joint Status Report on January 8, 2018.

[4] This Court issued the August 7, 2018 order "with consent of the parties." August 7, 2018 Order.

[5] The Stipulation included four exhibits: (A) Department's assessment notice; (B) BOA's decision; (C) Board's decision; and (D) Taxpayer's petition for review.

[6] The parties have attempted to settle the matter, but the Commonwealth's negotiations have been relative to the Utility Assessment portion of the Audit assessment, not the entire outstanding assessment amount of $31,218.01, plus interest. *See* Stipulation, ¶27.

[7] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

4

the "manufacture of tangible personal property." 72 P.S. § 7201(k)(8)(A), (o)(4)(B). The issue in the instant case is whether Taxpayer is entitled to a tax exemption for natural gas it consumed in the operation of machinery used directly in manufacturing or processing during the Audit Period.

**Discussion**

The Board determined that Taxpayer is engaged in both taxable and tax-exempt activities. To the extent that it is engaged in the fabrication for sale of structural metal under Section 201(d)(5) of the Tax Code,[8] Taxpayer is entitled to the processing exemption. The Board ruled that **the powder coating of chassis from race car owners, however, is the taxable activity of repairing or altering tangible personal property under Section 31.5 of the Department's Regulations, 61 Pa. Code § 31.5 (relating to persons rendering taxable services)**. The Board explained that the submitted utility study did not separate the amount of the ovens' usage for taxable versus exempt activities, and Taxpayer did not respond to the Board's attempts at obtaining a usage breakdown.

Taxpayer first argues that the Board erred in determining that Taxpayer's powder-coating service was taxable pursuant to Section 31.5 of the Department's Regulations because the services it renders in powder coating the vehicles it repairs constitutes manufacturing, not alteration. *See* Section 201(c)(6) of the Tax Code, 72 P.S. § 7201(c)(6). Specifically, Taxpayer contends that, because the function of the vehicles is changed in the powder-coating process and they are substantively transformed, the vehicles should be considered manufactured and, therefore, tax exempt. The Commonwealth rejoins that Taxpayer's powder coating

---

[8] 72 P.S. § 7201(d)(5) (defining "processing" as "[t]he fabrication for sale of ornamental or structural metal or of metal stairs, staircases, gratings, fire escapes or railings (not including fabrication work done at the construction site).").

does not change the composition of its customers' parts and, thus, it is not manufacturing.

Section 31.5(a) of the Department's Regulations provides, in relevant part:

> *Imposition.* **The following services rendered upon tangible personal property are 'taxable services'** whether or not tangible personal property is transferred in conjunction with the rendition of the services:
>
> > (1) **Repairing, altering**, mending, pressing, fitting, dyeing, laundering, drycleaning or cleaning **tangible personal property** other than clothing or footwear. . . . For example, if a bookcase is taken to a carpenter to have a defective shelf repaired, the charge for the repair is subject to tax. However, if a shoe is taken to a shoe repairperson to have a heel fixed, the charge for the repair is not subject to tax.
> >
> > . . . .
> >
> > (4) Inspecting, altering, cleaning, lubricating, polishing, repairing or waxing motor vehicles.

61 Pa. Code § 31.5(a) (emphasis added). Section 201(c)(6) of the Tax Code defines "manufacture" as including:

> **Remanufacture** for wholesale distribution by a remanufacturer of motor vehicle parts from used parts acquired in bulk by the remanufacturer using an assembly line process **which involves the complete disassembly of such parts and integration of the components of such parts with other used or new components of parts**, including the salvaging, recycling or reclaiming of used parts by the remanufacturer.

72 P.S. § 7201(c)(6) (emphasis added).

> As our Supreme Court has noted, the definition of manufacture emphasizes two separate criteria—the type of activity at issue and the result of that activity:

6

> To constitute 'manufacture,' *first*, the *type* of the activity must fall into one or more categories, i.e. 'manufacturing, fabricating, compounding, processing or other operations['] and *second*, as a *result* of one or more types of the prescribed activities, the personal property must be placed 'in a form, composition or character *different* from that in which [such personal property]' was acquired.
>
> *Commonwealth v. Sitkin's Junk Co.*, . . . 194 A.2d 199, 202 ([Pa.] 1963) (emphasis and alteration in original). **The burden is on the taxpayer to prove that the transaction sought to be taxed** is either not within the Tax Code or **is subject to an exemption.**

*DS Waters of Am., Inc. v. Commonwealth*, 150 A.3d 583, 585 (Pa. Cmwlth. 2016) (bold emphasis added).

Here, pursuant to the Stipulation, which is the only record evidence submitted to this Court for its *de novo* review, "[d]uring the Audit Period, Taxpayer used natural gas to heat its facility and to operate two ovens. The ovens were used (i) **to cure powder**[-]**coated parts** and (ii) to burn powder and contaminants off of parts." Stipulation, ¶5 (emphasis added). In Taxpayer's self-created Audit Utility Documentation, "Taxpayer averred **97% of the natural gas it purchased was consumed by its ovens in performing powder**[-]**coating or burn**[-]**off services**." Stipulation, ¶9 (emphasis added).

The Stipulation further provides that Taxpayer asserted to the BOA:

> **The nature of [Taxpayer's] powder**[-]**coating work is very busy in the months December through April, with burning off paint from various race**[]**car chassis**[]**, lawn furniture, etc. and recoating them**. The summer months work[]load consists of custom parts [Taxpayer] markets as an OEM supplier and whatever work comes in as a job shop.

Stipulation, ¶18 (emphasis added). Taxpayer also averred to the Board:

7

Since [Taxpayer's] inception back in October[] 1991, [we were] and continue[] to be a business that experiences highs and lows in workload based on the seasons. Starting from our company's beginning, **we have been recognized as the best company to take chassis to for professional and expert powder coating**. Our customers will attest to our reputation and the months in which we receive the majority of chassis frame[s] for powder coating.

As expressed in this appeal, **the winter months bring in chassis from the midget, sprint, dragster, go-cart and micro sprint car market[s]**.

Stipulation, ¶22 (emphasis added).

In its Summary of Argument to this Court, Taxpayer states that "it has produced enough evidence and documentation, pursuant to [Section 201(d) of the Tax Code] and [Section 31.5 of the Department's Regulations] to reduce its taxable Sales and Use Tax burden of Thirty-Nine Thousand One Hundred Nine and 05/100 Dollars ($39,109.05) by Eighty-Eight Percent (88%)." Taxpayer Br. at 8. However, Taxpayer has not submitted any evidence or documentation to this Court.[9]

"Our review of a [Board] determination is governed by Rule 1571 of the Pennsylvania Rules of Appellate Procedure, . . . which authorizes this Court to rule . . . on the stipulation of facts made by the parties." *Strongstown B&K Enters., Inc. v. Commonwealth*, 152 A.3d 360, 362 n.2 (Pa. Cmwlth. 2016), *aff'd*, 171 A.3d 252 (Pa. 2017). "The [Stipulation] is binding and conclusive upon this Court, but we may draw our own legal conclusions from those facts." *Id.* This Court cannot conclude based on the Stipulation[10] that Taxpayer's service of powder coating vehicles it

---

[9] Taxpayer provided the Board a "utility [study], which included detailed explanations of its business operations, photographs, and natural gas purchase invoices, to help the Board members 'better understand what [Taxpayer] does to earn tax revenue and support the local economy.'" Stipulation, Ex. C (Board's Order) at 2. However, the Stipulation does not include the utility study and, thus, is not before this Court for consideration. *See Strongstown B&K Enters., Inc. v. Commonwealth*, 152 A.3d 360 (Pa. Cmwlth. 2016), *aff'd*, 171 A.3d 252 (Pa. 2017).

[10] The above Stipulation references are the only mention of Taxpayer's powder-coating services therein.

repairs constitutes manufacturing, as opposed to alteration. *See* 72 P.S. § 7201(c)(6). "Taxpayer's bare assertions that its equipment was used in manufacturing . . . will not sustain its burden of proving that the tax was improperly assessed." *Fiore v. Commonwealth*, 668 A.2d 1210, 1217 (Pa. Cmwlth. 1995), *aff'd*, 690 A.2d 234 (Pa. 1997). Accordingly, this Court is constrained to hold that Taxpayer did not meet its burden of proving that its powder-coating services are exempt.

Taxpayer next argues that its natural gas usage should not be taxable because the Commonwealth, as set forth in its Audit, determined that a portion of the natural gas was used for heating Taxpayer's building. Specifically, Taxpayer contends:

> This Honorable Court can, from the record already in existence, determine that [Taxpayer] is entitled to **a reduction in taxes due to the nature of the gas usage**. As such, Taxpayer believes it is appropriate to determine that [Taxpayer's] Sales and Use Taxes should be reduced by Eighty-Eight Percent (88%).

Taxpayer Br. at 11 (emphasis added). The Commonwealth responds:

> Taxpayer appears to take the position that all natural gas not consumed to heat its facility is consumed by its ovens and directly used in manufacturing. Even if this were so, **Taxpayer must establish how much natural gas is consumed to heat its facility**. Taxpayer did not do so during the [A]udit and has not done so now.

Commonwealth Br. at 11 (emphasis added).

The parties stipulated that the amount of natural gas associated with heating Taxpayer's facility fluctuates with the outside temperature. *See* Stipulation, ¶6. At the time of the Audit, Taxpayer produced the Audit Utility Documentation based on gas usage for one month. However, the Audit Utility Documentation did not specify to which month it applied. Based thereon, the Department determined

9

that the Audit Utility Documentation was insufficient to establish the percent of natural gas that was exempt from tax.

Section 32.25(d)(4)(vi) of the Department's Regulations provides:

> The purchase and use of . . . natural . . . gas, . . . by a person engaged in the business of manufacturing, [or] processing, . . . , may require apportionment between taxable and exempt use if a portion of the purchase is used directly in one or more of these business operations. **To apportion the usage, an analysis of exempt usage shall be made**. Any reasonable method of apportionment may be used. For example, the purchaser may estimate the exempt use of electricity through each meter by analyzing the electrical consumption of each item of equipment used directly by the purchaser in its manufacturing operation. **This analysis should be annualized to reflect consumption during the entire calendar year**. The resulting percentage of exempt use may be claimed by the purchaser upon the total monthly purchase of electricity through that meter . . . .

61 Pa. Code § 32.25(d)(4)(vi) (emphasis added). Accordingly, the Department properly determined that Taxpayer's Audit Utility Documentation listing one unidentified month was insufficient to establish a percentange of its exempt gas usage.

This Court acknowledges: "The record in this case was established by [S]tipulation of [Taxpayer] and [the Commonwealth] . . . . [W]hether or not [Taxpayer] failed to provide the BOA or the Board certain [documentation] is of no moment in this proceeding because the record here is *de novo*." *Golden Eagle Constr. Co., Inc. v. Commonwealth*, 813 A.2d 13, 16 n.6 (Pa. Cmwlth. 2002), *aff'd*, 834 A.2d 1103 (Pa. 2003). However, Taxpayer has not provided this Court with any analysis of the exempt usage. Instead, without any support, Taxpayer requests an 88% exemption.[11] *See* Taxpayer Br. at 11. Consequently, this Court cannot hold that

---

[11] Taxpayer claimed a 100% exemption at the time of the Audit. *See* Stipulation, ¶7. Taxpayer claimed a 97% exemption in its Audit Utility Documentation. Stipulation, ¶9. Taxpayer

Taxpayer's natural gas usage is exempt simply because the Commonwealth's Audit determined that a portion of the natural gas was used to heat Taxpayer's facility.

## Conclusion

Because this Court has determined that Taxpayer has not met its burden of proving that its powder-coating services are tax exempt as manufacturing, and Taxpayer has not produced any documentation as to the percentage of gas usage apportioned between heating taxable activities and non-taxable activities,[12] Taxpayer's Petition was properly denied.

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

---

claimed an 88.15% exemption before the BOA and the Board. *See* Stipulation, ¶¶16, 21. None of the above-stated percentages were supported by anything but Taxpayer's assertions.

[12] In its petition for review, Taxpayer asserts that the Board's order "fails to take into consideration the prior studies provided by [Taxpayer] indicating the percentage of exempt and non-exempt natural gas usage." Stipulation, Ex. D at 7-8. Because the prior studies were not included in the Stipulation, this Court cannot consider them. *See Strongstown B&K Enters., Inc.*

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Van Industries, Inc.,                                    :
                          Petitioner                     :
                                                         :
               v.                                        :
                                                         :
Commonwealth of Pennsylvania,          :          No. 861 F.R. 2015
                          Respondent                     :

## O R D E R

AND NOW, this 21st day of June, 2019, the Board of Finance and Revenue's December 2, 2015 order is affirmed.  The parties have 30 days from the entry of this order in which to file exceptions.


_____
ANNE E. COVEY, Judge